**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

FRANCIS WILLIAMS,            )    **S. Ct. Crim. No. 2019-0068**
    Appellant/Defendant,     )    Re: Super. Ct. Crim. No. 257/2016 (STX)
                                       )
v.                                 )
                                        )
PEOPLE OF THE VIRGIN ISLANDS,   )
    Appellee/Plaintiff.             )
_____ )

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Harold W. L. Willocks

Argued: November 9, 2021
Filed: August 16, 2024

Cite as: 2024 V.I. 27

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Kelechukwu Chidi Onyejekwe, Esq.**
Office of the Territorial Public Defender
St. Thomas, U.S.V.I.
    *Attorney for Appellant*,

**Ian S.A. Clement, Esq.**
**Kenneth R. Case, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I.
    *Attorney for Appellee.*

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 2 of 37

2024 V.I. 27

## OPINION OF THE COURT

**SWAN, Associate Justice.**

¶1    Appellant Francis Williams, Jr. ("Williams") challenges his multiple convictions for various crimes including second degree murder and first-degree assault. While Williams' initial notice of appeal enumerated various claimed errors, the only arguments briefed on appeal relate to jury instructions on malice for the murder charge, his convictions for use of a firearm, and the propriety of a stalking conviction under circumstances where the victim has died. For the reasons elucidated below, we affirm the Superior Court's judgment.

### I.    FACTS AND PROCEDURAL HISTORY

¶2    In 2014, Williams and Lesha Lammy ("Lammy") began an intimate relationship in St. Croix, U.S. Virgin Islands.[1] However, by July 2016, the relationship had apparently ended. Although they attempted to remain cordial towards each other, because they were Virgin Islands Police Department ("VIPD") officers and colleagues, Williams' and Lammy's interactions had severely deteriorated to the extent that Williams was transferred from the Frederiksted Police Station, where he originally worked with Lammy, to the Christiansted Police Station.

¶3    Undeniably, Williams pursued Lammy because he wanted to rekindle their relationship and was displeased that Lammy commenced a new, intimate relationship in June or July 2016 with Kai Javois ("Javois"), who was also a VIPD officer. However, Lammy rejected Williams' repeated overtures towards her, and the two found themselves in constant disagreements. Specifically, on July 23, 2016, Williams prohibited Lammy from driving her vehicle by obtaining and absconding with her

---

[1] St. Croix has two towns- Christiansted on the eastern end of the island and Frederiksted on the western end of the island.

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 3 of 37

2024 V.I. 27

car keys, thereby preventing her use of her vehicle. Ultimately, Williams returned the car keys to Lammy.

¶4 Moreover, despite the termination of their intimate relationship and the contentious nature of their subsequent interactions, Williams frequented Lammy's residence in the early morning hours on multiple occasions to bring her food, which Lammy accepted, although she never spoke to Williams during these encounters. Furthermore, Williams would repeatedly call Lammy on her cellular telephone, but she blocked his number and refused to respond to his text messages.

¶5 On August 5, 2016, Williams arrived at Lammy's residence, which she shared with her mother, Dolores Silas ("Silas"), to apologize for taking Lammy's car keys on July 23, 2016. Williams attempted to apologize to Silas, but Silas said that he owed the apology to Lammy. Williams replied that Lammy refused to talk to him, but he loved her nonetheless. Williams stated to Silas that he wanted to marry Lammy and retrieved a small white box from his pocket, which purportedly contained a ring. However, Lammy had rejected Williams' marriage proposal.

¶6 In the weeks before August 10, 2016, numerous VIPD colleagues observed a discernable change in Williams' demeanor. Before June 2016, many indicated that Williams had joked openly and laughed with them. However, after July 2016, his co-workers and superiors, including Lieutenant Cecil Gumbs ("Gumbs"), Williams' immediate supervisor at the Christiansted Police Station, indicated that Williams appeared depressed, forlorn, and extremely agitated. Gumbs' concern prompted him to call Williams into his office, and he offered to get Williams psychological assistance, but Williams refused the offer and claimed that he was fine.

¶7 On August 10, 2016, VIPD commanders assigned Williams to work the 7 a.m. to 3 p.m. shift with Officer Karishma Smith ("Smith") in police cruiser number 489. Initially, Williams said Smith

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 4 of 37

2024 V.I. 27

should drive because he felt unwell. Sometime after 12 p.m., Williams said he needed to retrieve an item from another police station and Smith agreed to drive him there.

¶8      However, as they drove past Sam's Gas Station, Williams asked Smith to turn around because he was thirsty and wanted a bottle of water from Sam's Gas Station. Smith informed Williams that they were approaching another gas station, but Williams insisted Smith return to Sam's. Ultimately, Smith acquiesced. Upon entering the gas station and parking the police car, Smith observed Javois whom she engaged in conversation about Javois' day off. As Smith and Javois talked, Williams exited the police cruiser and entered the store. Subsequently, Javois left and Williams returned to the police car without the water because, according to Williams, the line in the store was too long.

¶9      After returning to the police car, Williams insisted on driving. Smith protested and told Williams that she did not mind driving, but Williams was adamant. Eventually, Smith relented. At that juncture, Williams drove towards the police station where Williams intended to retrieve the item that he wanted.

¶10     However, Smith soon realized that they had passed the police station, and she asked Williams where they were going. Williams said that he needed to return to his home for something. Subsequently, they drove towards Melvin Evans Highway and proceeded to Frederiksted. Yet, Williams failed to stop at his residence and, instead, proceeded in the direction of the White Lady Area in Frederiksted. Crucially, Williams' departure from his assigned duty sector in Christiansted without permission from his VIPD superiors was contrary to VIPD procedure. Regardless, Williams proceeded to Frederiksted without authorization.

¶11     Eventually, Smith and Williams saw Javois' white Jeep Wrangler vehicle exiting the White Lady Area. Williams traveled in the direction of Javois' vehicle, stopped, and explained to Smith that they were at Lammy's residence. Upon arriving at Lammy's house, Williams deliberately drove the

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 5 of 37

2024 V.I. 27

police cruiser within a few feet of Javois' vehicle, which caused Javois to maneuver his vehicle to circumnavigate the police cruiser. Smith observed only Javois in his vehicle.

¶12    After Javois' evasion of the police cruiser and his eventual departure from the area, Williams exclaimed to Smith, in an exceedingly hostile tone, that he knew Lammy was with Javois. Williams further iterated that Javois was a complete loser, that Lammy left him a month ago for that loser, and that Williams would have married Lammy, but she preferred Javois. Finally, Williams said he initially considered Javois a friend and was disappointed that Javois decided to date Lammy.

¶13    Eventually, Williams returned to the Christiansted Police Station so Smith could exit the vehicle. Subsequently, Williams departed from the Christiansted Police Station. Shortly thereafter, although Smith repeatedly called Williams so she could obtain the police cruiser's mileage, which she needed to conclude her work shift, Smith could not contact Williams because his cellular telephone calls went directly to voicemail. Ultimately, Williams returned to the Christiansted Police Station to report the vehicle's mileage.

¶14    On August 11, 2016, officers were informed that Javois and Lammy were missing. Officer Keisha Benjamin ("Benjamin"), together with two other officers, decided to search for the missing pair. When they left the Christiansted Police Station, Benjamin first went to Lammy's residence but failed to find her. After leaving Lammy's home, one of the officers who accompanied Benjamin received a call from a person who said Lammy and Javois intended to hike at Hams Bluff, which is a remote area on the northern end of St. Croix. Although there are multiple routes to Hams Bluff, Benjamin proceeded to the location using the most direct road.

¶15    After arriving at Hams Bluff, the officers failed to locate Lammy or Javois. As Benjamin turned the police car around to depart Hams Bluff, the officers saw a blue minivan vehicle approaching them. The van's occupants flared their arms out of the vehicle to obtain the officers' attention. Excitedly, the

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 6 of 37

2024 V.I. 27

van's occupants informed the officers that there were two bodies on the beach. Carefully, the occupants led the officers through dense foliage to the bodies' location. Benjamin immediately recognized Javois' vehicle as well as the bodies of Javois and Lammy. Despite being emotional, Benjamin radioed for assistance and the three officers cordoned off the location. Eventually, forensic personnel and crime scene technicians arrived at Hams Bluff to retrieve the bodies and collect physical evidence. Principally, the physical evidence obtained from the crime scene included a spent .40 caliber Glock model 22 casing and latent finger prints from Javois' vehicle. Forensic tests would later match the retrieved casing to Williams' police-issued service weapon.

¶16 On September 9, 2016, authorities arrested Williams on an eleven count information alleging first degree murder, in violation of 14 V.I.C. § 922(a)(1) and (a)(2); first degree assault, in violation of 14 V.I.C. §295(1); false imprisonment, in violation of 14 V.I.C. §1051(a); use of a dangerous weapon during the commission of a violent crime, in violation of 14 V.I.C. §2251(a)(2)(B); stalking/domestic violence, in violation 14 V.I.C. §2072(a) and 16 V.I.C §91(b)(13); and aggravated assault and battery and domestic violence, in violation of 14 V.I.C. §298(2) and 16 V.I.C. §91 (b)(1)(2).

¶17 On May 13, 2019, the six-day trial commenced. At the close of the People's case, Williams moved for an acquittal on all charges pursuant to Virgin Islands Rule of Criminal Procedure 29. Although the court granted Williams' Rule 29 motion on the aggravated assault and battery charge, the court denied the Rule 29 motion on the remaining charges.

¶18 On May 21, 2019, the People filed an amended information that also charged Williams with two counts of second-degree murder. On the same day, the jury convicted Williams of the second degree murder of Lammy and Javois, the first degree assault of Lammy and Javois, the use of a dangerous weapon during the commission of a violent crime against Lammy and Javois, and stalking

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 7 of 37

2024 V.I. 27

Lammy. The jury also convicted Williams of the lesser included offense of voluntary manslaughter. Pursuant to *Titre v. People*, 70 V.I. 797 (V.I. 2019), the court dismissed the first degree assault convictions and sentenced Williams on the remaining charges. The court memorialized Williams' sentence in a September 12, 2019 judgment.

¶19    On August 27, 2019, Williams perfected the instant appeal.

## II.    JURISDICTION

¶20    "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court." 4 V.I.C. § 32(a). "An order that disposes of all claims submitted to the Superior Court is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)). Because the Superior Court's September 12, 2019 order sentencing Williams disposed of all claims submitted for adjudication, the order is final and we exercise jurisdiction over Williams' appeal.

## III.    STANDARD OF REVIEW

¶21    We review the trial court's factual findings for clear error and exercise plenary review over its legal determinations. *Thomas v. People*, 63 V.I. 595, 602-03 (V.I. 2015) (citing *Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010)). "However, in ruling on the correctness of discretionary rulings, such as those granting or denying motions to suppress evidence or for severance, we review only for abuse of discretion." *Ponce v. People*, 72 V.I. 828, 833 (V.I. 2020) (citations omitted). Moreover, "[w]hen reviewing a claim of insufficient evidence, we view all issues of credibility in the light most favorable to the People and will affirm where 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Tyson v. People*, 59 V.I. 391, 400 (V.I. 2013). *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *United States v. Kelerchain*, 937 F.3d 895, 907 (7th Cir. 2019); *United States v. Atkins*, 881 F.3d 621, 624-25 (8th Cir. 2018). Finally, although jury instructions are

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 8 of 37

2024 V.I. 27

typically reviewed for an abuse of discretion, plain error is the standard of review when a party fails to object to them at trial. *Prince v. People*, 57 V.I. 399, 405 (V.I. 2012).

## IV. DISCUSSION

### A. Waived Issues

¶22 Rule 4(c) of the Virgin Islands Rules of Appellate Procedure states that a "notice of appeal . . . . shall designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal." We first note Williams cites five distinct issues in his notice of appeal,[2] yet, none of these relate to the jury instructions he challenges.[3] Despite this failure, in his appellate brief, Williams principally indicates that the jury instructions are the basis for this appeal. Importantly, at

---

[2] In the notice of appeal, Williams enumerates six grounds: "(1) sufficiency of the evidence; (2) denial or partial granting of [his] pre-trial motions including [his] motion to exclude expert firearms identification testimony; (3) denial of [his] motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29; (4) that the verdict was against the weight of the evidence; (6) that a witness for the prosecution was not competent, lacked capacity, and/or lacked personal knowledge to testify; (7) and any other issue or objection raised at trial or in [his] pre-trial and post-trial motions, and oral argument at pre-trial, trial, post-trial, and sentencing below." J.A. 6.

[3] In his notice of appeal, the appellant indicates that he "will raise the following issues, without limitation: . . . (7) any other issue or objection raised at trial or in Appellant's pre-trial and post-trial motions, and oral argument at pre-trial, trial, post-trial, and sentencing below." Undeniably, the purpose of a notice of appeal is "to ensure that the filing provides sufficient notice to other parties and the courts," *Smith v. Barry*, 502 U.S. 244, 248 (1992) (citing *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317-18 (1988)). It "must specifically indicate the litigant's intent to seek appellate review," *id.* (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)), and "contain sufficient information so as not to prejudice or mislead" those to whom the notice is being provided, so that "there could be no misunderstanding as to the nature of the judgment being appealed from." *Markham v. Holt*, 369 F.2d 940, 942 (5th Cir. 1966). Appellant's statement in his notice of appeal, which is quoted above, is too broad, because it lacks sufficient specificity to provide notice of any particular issue that he intends to raise on appeal. Neither the appellee, nor this Court, can rely upon such a broadly worded statement to anticipate or prepare for the specific issues that the appellant intends to raise on appeal. An opposite conclusion would effectively write the requirement that "the notice of appeal . . . shall designate . . . the reason(s) or issue(s) to be presented on appeal," V.I.R. App. P. 4(c), out of the rule, because there would be no need to specify any particular issue in the notice of appeal. *See* Webster's Third New International Dictionary 612 (1993) (defining "designate" as to "specify" or "to call by a distinctive title, term, or expression"). Because the rules of this Court are subject to the same interpretive rules that apply to statutes, *see, e.g., Companion Assurance Co. v. Smith*, 66 V.I. 562, 569 (V.I. 2017) (explaining that "the Virgin Islands Rules of Appellate Procedure . . . have the force of law, and are to be interpreted and construed in the same manner as statutes"), we are precluded from construing the language of Appellate Rule 4(c) in such a manner, as it would ignore the plain meaning of the term "designate" and render it void. *Corraspe v. People*, 53 V.I. 470, 482 (V.I. 2010) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that . . . no clause, sentence, or word shall be superfluous, void , or insignificant.") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 9 of 37

2024 V.I. 27

trial, Williams failed to object to multiple issues he attempts to raise in his notice of appeal, and he failed to challenge the jury instructions.[4] Moreover, the trial record fails to identify precisely when at trial Williams objected to some of the non-jury instruction issues cited in his appellate filings, despite his assertions to the contrary.[5]

¶23    Undeniably, issues in a notice of appeal, which are unexplained or unaddressed in an appellant's brief, are waived. *See Simpson v. Golden*, 56 V.I. 272, 279 (V.I. 2012) ("[I]ssues raised in a notice of appeal but not argued in an appellant's brief are waived.") (citations omitted); *Id.* ("To properly obtain review, an appellant has a duty to outline in his main appellate brief the issues for which review is sought, and the issues thereby listed shape the parameters of the appellate court's consideration. Moreover, an appellant is bound to submit arguments in support of the issues presented, supported by legal authorities and applied to the facts reflected on the record.") (citations omitted); *Francis v. People*, 57 V.I. 201, 250-51 (V.I. 2012) (same).

¶24    Similarly, issues in an appellant's brief, which were not raised at trial, are also waived unless the issues affect the appellant's substantial rights. *See* V.I. R. APP. P 22(m) ("Issues that were (1) not raised or objected to before the Superior Court, (2) raised or objected to but not briefed, or (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an

---

[4] Although Williams made a Rule 29 motion at the close of all evidence at trial and has a right to appellate review of the court's denial of that motion, Williams did not challenge the court's ruling of any of his pre-trial, post-trial, or in-trial motions, he did not object to the competency of any prosecution witness, nor did he dispute the jury instructions.

[5] Repeatedly, throughout his brief, Williams routinely states that he raised certain issues in his Rule 29 motion but did so in other words. Appellant's Br. 8-9. Noticeably, in addition to the jury instructions, Williams' brief argues the inconsistency of his convictions for second degree murder and voluntary manslaughter, his inability to unlawfully possess a weapon pursuant 14 V.I.C. §2251, and his inability to stalk Lammy because she died. However, Williams did not assert any of these arguments at trial and asserts them for the first time on appeal.

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 10 of 37

2024 V.I. 27

error not presented that affects substantial rights."). If the appellant's substantial rights are implicated, we only review for plain error because the appellant failed to object to the issue at trial. *Woodrup v. People*, 63 V.I. 696, 720 (V.I. 2015). *See United States v. Rose*, 538 F.3d 175, 178 (3rd Cir. 2008). Under plain error review, (1) there must be an error, (2) that is plain, (3) which affects a defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Wallace v. People*, 71 V.I. 703, 711 (V.I. 2019) (citations omitted). *See Johnson v. United States*, 520 U.S. 461, 466 (1997) (same); *Henderson v. United States*, 568 U.S. 266, 268 (2013) (same); *Davis v. United States*, 140 S. Ct. 1060, 1061 (2020) (same).

¶25    Here, Williams failed to object to the testimony of a prosecution witness allegedly because of the witness's lack of competency, did not object to the court's ruling on any of his pre-trial, post-trial, or in-trial motions except the court's ruling on the rule 29 motion,[6] and did not brief the issue of the court's admission of the firearm expert testimony. Additionally, although Williams raised the issue in his notice of appeal, Williams did not brief his objections to the court's ruling on his rule 29 motion. Therefore, because Williams did not preserve these issues for appellate review, we deem them to be waived. *See Ubiles v. People*, 66 V.I. 572, 583 (V.I. 2017) ("[A] party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal.") (citations omitted); *Walters v. Walters*, 60 V.I. 768, 774 n.6 (V.I. 2014) (explaining that appellant waived his right to appellate review of a trial court decision when appellant's brief contained no legal argument with respect to the lower court's post-trial written order dismissing his complaint with prejudice, and the record did not reflect a

---

[6] "(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so." V.I. R. CRIM. P. 29 (a).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 11 of 37

2024 V.I. 27

sufficient objection to the oral ruling that preceded the dismissal); *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 748 n.2 (V.I. 2014) (noting that appellant's argument was deemed waived on appeal when appellant alleged in his appellate brief that the trial court erred in failing to instruct the jury on an issue in a premises liability case, but appellant never requested that an instruction be given on the issue at trial).

## B. Jury Instructions Regarding the Malice Element on Murder Charges

¶26    Williams argues that the Superior Court's jury instructions on malice warrant a reversal of his second-degree murder convictions because they absolved the People from proving every element of the charged offenses. Appellant's Br. 23. Because the People have a constitutional duty to prove each element of charged offenses beyond a reasonable doubt pursuant to the Due Process clause of the Fifth Amendment, the People's failure to establish every element of charged offenses affects a defendant's substantial rights as well as seriously impugns the fairness, integrity, and public reputation of judicial proceedings. *United States v. Castro*, 704 F.3d 125, 138 (3rd. Cir. 2013).

¶27    Williams did not object to the proffered jury instructions, and thus we review the jury instructions in this matter for plain error. *Davis v. People*, 69 V.I. 600, 616 (V.I. 2018); *Monelle v. People*, 63 V.I. 757, 763 (V.I. 2015) (citing *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011)). To establish plain error, Williams must show an error, which was plain, that affected his substantial rights. *Id.* (citing *Phipps*, 54 V.I. at 546). In order for an error to affect Williams' substantial rights, there must be a reasonable probability that the error affected the outcome of the trial. *Fahie v. People*, 59 V.I. 505, 511 (V.I. 2013) (citing *Elizee v. People*, 54 V.I. 466, 479 (V.I. 2010)). Any challenge alleging reversible error in jury instructions must be considered in light of the complete jury instructions and the whole trial record. *Davis*, 69 V.I. at 616; *Monelle*, 63 V.I. at 763 (collecting cases). "The specific elements of a crime are the only elements the jurors must consider in their deliberation, as they

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 12 of 37

2024 V.I. 27

compare the evidence in the case with the trial court's instructions on the specific elements of the crime." *Francis v. People*, 52 V.I. 381, 406 (V.I. 2009). And even if it adds definitions that are inconsistent with the elements of an offense, the Superior Court does not commit plain error if it still properly instructs the jury on the elements of the charged offense. *See Cascen v. People*, 60 V.I. 392, 414 (V.I. 2014) (inclusion of felony murder in a first-degree murder instruction did not deprive the defendant of his rights where the court properly instructed the jury on the elements of premeditated first-degree murder); accord *United States v. McRae*, 593 F.2d 700, 705-06 (5th Cir. 1979) (a defendant's rights were not prejudiced when the trial court included the definition of first-degree murder in the jury instructions where the jury was properly instructed that it must find the elements of second-degree murder to convict); *see also Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (a jury instruction violates due process if it fails to require the government to prove every element of an offense beyond a reasonable doubt).

¶28 Despite his protestations regarding the inaccuracy of the jury instructions, the record reveals that Williams, through his counsel, repeatedly stated he had no objections to them before the court disseminated the instructions to the jury.

¶29 Crucially, because Williams never challenged the jury instructions on malice or malice aforethought during the conference on jury instructions in the court's chambers, we review the jury instructions in this matter only for plain error. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (a challenged jury instruction cannot "merely be undesirable, erroneous, or even 'universally condemned,' but [must] violate[] some due process right which was guaranteed . . . by the fourteenth amendment."); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (in order to prevail, a challenger must demonstrate that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process"); *Rosales v. Milyard*, No. 10-CV-03101-CMA, 2013 WL 1302657,

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 13 of 37

2024 V.I. 27

at *6 (D. Colo. Mar. 29, 2013) (unpublished) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. However, not every 'ambiguity, inconsistency, or deficiency' in a jury instruction renders the instruction constitutionally infirm.") (citations omitted); *United States v. Sheehan*, 512 F.3d 621, 631 (D.C. Cir. 2008) ("The prosecution's 'burden of proving all elements of the offense charged" and obligation to "persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements' arise from the Due Process Clause of the Fifth Amendment.") (citations omitted).

¶30    To assess jury instructions, we analyze the entire jury instruction made in the Superior Court's charge to the jury, i.e., "the full set of jury instructions," *Byrd v. Lewis*, 510 F.3d 1045, 1050 (9th Cir. 2007), and whole trial record. *Francis v. People*, 52 V.I. 381, 405 (V.I. 2009) (citing *Byrd*, 510 F.3d at 1050). To withstand scrutiny, jury instructions must fairly and adequately address the issues in the case and correctly state the law. *United States v. Heard*, 951 F.3d 920, 926 (8th Cir. 2020); *Barthelus v. G4S Government Solutions*, 141 F.Supp.3d 1309, 1317 (S.D. Fla. 2015). "In the case of legally accurate jury instructions, reversal is appropriate only 'if the instructions as a whole [were] insufficient to inform the jury correctly of the applicable law and the jury [wa]s thereby misled.'" *United States v. Carpenter*, 803 Fed. Appx. 959, 962 (7th Cir. 2020) (citations omitted). *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 933, 1018 (11th Cir. 2004) ("[A] party must prove that the instruction was a misstatement of law that likely led to an incorrect verdict.") (citations omitted); *Id.* (to warrant reversal, "the instruction must also mislead the jury or leave the jury to speculate as to an essential point of law.") (citations omitted).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 14 of 37

2024 V.I. 27

¶31    To reiterate, Williams claims that the jury instructions, specifically on malice, invaded the province of the jury, usurped his presumption of innocence, and relieved the People of its duty to prove every element of the charged offenses, namely murder[7, 8] and manslaughter.[9]

¶32    At trial, the Superior Court defined malice aforethought as follows: "Malice Aforethought: To act with malice aforethought is to act with a depraved spirit or mind bent on evil or mischief without regard to its consequences. Malice can be inferred from the circumstances, including the use of a deadly weapon in the commission of a crime." J.A. Vol. III 1461.

¶33    The court recited essentially the same malice aforethought definition detailed above with some additional information and then, in a separate statement, indicated that malice is inferred from the use of a deadly weapon.

> Malice aforethought may be inferred from the circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences. Malice aforethought does not mean simple hatred []or particular ill will, but extends to and embraces generally the state of mind with which one commits a wrongful act; and includes all those states of mind in which a homicide is committed without legal justification, extenuation, or excuse. Malice is inferred when the killing is accomplished by the use of a weapon or other instrument in such a manner to naturally and probably cause death.

J.A Vol. III 1466.

---

[7] "(a) All murder which—(1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing; (2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny; or (3) is committed against (A) an official, law enforcement officer, or other officer or employee of the Government of the Virgin Islands while working with law enforcement officials in furtherance of a criminal investigation (i) while the victim is engaged in the performance of official duties; (ii) because of the performance of the victim's official duties; or (iii) because of the victim's status as a public servant; or (B) any person assisting a criminal investigation, while that assistance is being rendered and because it is first degree murder; is murder in the first degree." 14 V.I.C. § 922(a).

[8] "(b) All other kinds of murder are murder in the second degree." 14 V.I.C. § 922(b).

[9] "Manslaughter is the unlawful killing of a human being without malice aforethought. It is of two kinds—(1) voluntary; upon a sudden quarrel or heat of passion.. . ." 14 V.I.C. § 924(1).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 15 of 37

2024 V.I. 27

¶34    The court duplicated the identical instruction multiple times in its charge to the jury. *See* J.A. Vol. III 1467-68; J.A. Vol. III 1470; J.A. Vol. III 1472.

¶35    Essentially, Williams contends that the statement that "[m]alice is inferred when the killing is accomplished by the use of a weapon or other instrument in such a manner to naturally and probably cause death" impermissibly permits the jury to conclude the presence of malice, which relieves the prosecution of establishing malice aforethought as elements of first- and second-degree murder. Appellant's Br. 23. Moreover, Williams further alleges that the instruction forces the jury to unconstitutionally deduce the presence of malice for voluntary manslaughter, although malice is not an element of that charge. Appellant's Br. 21.

¶36    As support for his contentions, Williams cites *Sandstrom v. Montana*, 442 U.S. 510, 523-24 (1979), in which the United States Supreme Court determined that a trial court's jury instructions violated the defendant's due process rights because the instructions relieved the prosecution of proving every element of the charged offense beyond a reasonable doubt. "The *Sandstrom* Court considered 'the way in which a reasonable juror could have interpreted the instruction' as determinative of 'whether a defendant has been accorded his constitutional rights.'" *Johnson v. McKune*, 288 F.3d 1187, 1192 (10th Cir. 2002). To ascertain whether a particular jury instruction absolves the prosecution of proving an element of a crime, the Supreme Court in *Sandstrom* announced a three part test: (1) whether the instructions concerned an essential element of a crime for which the defendant is charged; (2) whether the instructions shifted the burden of

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 16 of 37

2024 V.I. 27

proof to the defendant; and (3) whether the shift of the burden of proof to the defendant resulted in harmless error. *Davis v. Kemp*, 752 F.2d 1515, 1517 (11th Cir. 1985).[10]

## 1. Plain Error

¶37　The validity of jury instructions is assessed on the whole or under the totality of the circumstances. Thus, if all the instructions in the charge to the jury fail to constitute error that prejudices a defendant, we will affirm the trial court's use of a challenged instruction. *See Roebuck v. Gov't of the V.I.*, 2021 V.I. 13, ¶14 (V.I. 2021); *Russell v. Wengler*, No. C07-5506FDB-KLS, 2008 WL 4279592, at \*13 (W.D. Wash. Sept. 16, 2008) (unpublished) ("In reviewing the particular jury instruction at issue, it must be kept in mind that 'the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.'"); *United States v. Hodge*, 870 F.3d 184, 205 (3rd Cir. 2017) ("[W]hen we consider jury instructions[,] we consider the totality of the instructions and not a particular sentence or paragraph in isolation.") (citations omitted); *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014) ("We examine jury instructions in context, considering 'the allegations of the complaint, the evidence presented, and the arguments of counsel when determining whether the jury understood the issues or was misled.' . . . So long as the 'instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism.'")

---

[10] Although Williams cites *Sandstrom* as the proper basis to evaluate the Superior Court's jury instructions and *Sandstrom* test contains a harmless error component, the preceding analysis indicates that plain error is the correct standard to evaluate the trial court's jury instructions because of Williams' failure to object to the instructions at trial. In applying plain error review, we recognize two key distinctions between harmless error and plain error. Namely, under plain error, the defendant must show that reversal is necessary to avoid a miscarriage of justice and the defendant must demonstrate palpable prejudice that affected his substantial rights. *Guam v. Quitugua*, No. CRA08-007, 2009 WL 3299830, at \*7 (Guam Oct. 13, 2009).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 17 of 37

2024 V.I. 27

(citations omitted); *Badger v. So. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1339 (11th Cir. 2010) ("We will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial.") (citations omitted).

¶38     In *Patton v. Mullin*, 425 F.3d 788, 805 (10th Cir. 2005), the Tenth Circuit Court of Appeals upheld a jury instruction where the trial court stated that "[a] design to effect death is inferred" if the killing occurs by the use of a dangerous weapon. Interestingly, the Oklahoma Committee for the Preparation of Uniform Criminal Jury Instructions cautioned against using "is inferred" in jury instructions because the phrase could lead jurors to impermissibly conclude the defendant killed the victim with the requisite mens rea unless reasonable doubt was raised by the other circumstances. *Id.* at 805-06. Regardless, the Tenth Circuit opined in *Patton* that the attendant circumstances with which the trial court employed the instruction removed any potential unconstitutionality. Specifically, the court noted that the trial court's use of the instruction in conjunction with other directives prevented the jury from unconstitutionally shifting the burden of proof to the defendant. First, the court mentioned the lower court's pronouncement that the prosecution had a duty to prove every element for the charged offenses beyond a reasonable doubt. *Id.* at 806. Second, the court recognized the accurate instructions on the presumption of innocence, circumstantial evidence, and first degree murder which included a reminder that the prosecution had to establish malice aforethought. *Id.* at 806-07. Therefore, because the trial court included accurate instructions along with the disputed one, the *Mullin* court held that there was no prejudice to the defendant despite the tenuous nature of the "is inferred" instruction. *Id.* at 807.

¶39     In *United States v. Houser*, 130 F.3d 867 (9th Cir. 1997), the Ninth Circuit Court of Appeals addressed the validity of jury instructions where the jury had to assess malice aforethought

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 18 of 37

2024 V.I. 27

relative to the defendant's claim that a shooting was accidental. Although the Ninth Circuit found the trial court's instruction troublesome because the instruction may have allowed the jury to focus on one fact while excluding others, *id.* at 869-70, the court ultimately determined that the trial court's additional instructions eliminated the potential unconstitutionality of the malice aforethought instruction. *Id.* at 870. Specifically, to substantiate its position, the court referenced, among other things, the trial court's instruction that the jury was the sole judge of the facts, the trial court's numerous iterations to disregard anything it may have said or done as an indication of how the jury should evaluate the evidence or what the verdict should be, and the trial court's affirmation that the prosecution had to prove every element for the charged offenses beyond a reasonable doubt. *Id.* Thus, the *Houser* court concluded that the malice aforethought instruction did not prejudice the defendant because the trial court supplemented the challenged instruction with correct instructions. *Id.*

¶40     Here, the Superior Court's instruction that malice is inferred from the use of a deadly weapon is certainly disturbing.[11] If not clarified by other instructions which inform the jury that malice *may be* inferred (but is *not required* to be inferred) by the use of a deadly weapon, the jury might erroneously conclude the government is unconstitutionally relieved from establishing malice as an element of a charged offense. However, in this case, the trial court provided copious mitigating instructions which would have prevented the jury from reaching that impermissible conclusion. Specifically, the court instructed the jury that it must not focus on one instruction and should consider the instructions as a whole. J.A. Vol. III 1439. To further encourage jury

---

[11] We caution the judges of the Superior Court that is it inadvisable to state in jury instructions that malice is inferred by the use of a deadly weapon. We unequivocally recommend the conditional form of the instruction as delineated in *Nicholas v. People*, 56 V.I. 718, 732 (V.I. 2012) - "[W]here the killing is proved to have been accomplished with a deadly weapon, malice can [or may] be inferred from that fact alone."

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 19 of 37

2024 V.I. 27

autonomy, the court told the jury that it should disregard any question the court posed to witnesses and that the jury should not assume that the court favored one litigant over another. *Id.* at 1440-41. Moreover, the court also told the jury that it was the sole judge of the facts and that each party was entitled to the jury's impartial consideration of the facts adduced at trial. *Id.* at 1441-42. Importantly, the court stated that the People had the duty to prove each element of the charged offenses beyond a reasonable doubt. J.A. Vol. III 1456-57, 1465.

¶41    Significantly, the Superior Court specifically instructed the jury that: "An inference is not a suspicion or a guess. It is a reasoned, logical decision[] to conclude that a disputed fact exists on the basis of another fact that you know exists. **It is a conclusion that the jury is permitted to draw, but is not required to draw, from the facts presented.**" J.A. Vol. III 1446 (emphasis added). The Superior Court further clarified in its instructions that "[y]ou **are permitted** to draw from the facts which you find have been proved, such reasonable inferences as seem justified in the light of your experience," *id.* at 1447 (emphasis added), and reiterated that "[i]nferences are deductions or conclusions which reason and common sense lead the jury to draw from the facts which have been established by the evidence in the case." *Id.* at 1447-48. The Superior Court further instructed the jury that "[y]ou are to reach your verdict solely in accordance with these instructions and with the evidence before you and the reasonable inferences, which in your sound, conscientious discretion, **may be** drawn therefrom." *Id.* at 1444 (emphasis added). It also instructed the jury that "**[y]ou may infer, but you certainly are not required to infer**, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted." *Id.* at 1463 (emphasis added).

¶42     Although it frequently told the jury that malice is inferred by the use of a deadly weapon, the court also repeatedly told the jury the correct standard for malice aforethought and always did so immediately preceding the challenged instruction. *See* J.A. Vol. III 418-32. Likewise, the court properly instructed the jury on the elements of voluntary manslaughter on multiple occasions. Furthermore, it gave multiple instructions correctly informing the jurors that they were permitted, but not required, to draw reasonable inferences from the evidence that had been admitted in the case. *Id.* Accordingly, the Superior Court frequently provided the jury with the correct standard for malice aforethought and gave sufficient supplemental instructions that reiterated the People's burden to prove Williams guilty of the charged offenses beyond a reasonable doubt, which might be accomplished by reasonable inferences that they could opt to draw, but were not required to draw, in the case. By employing these remedial measures, the court prevented the jury from erroneously relieving the People of the burden to prove each and every element of the charged offenses beyond a reasonable doubt. Therefore, we hold that the Superior Court's use of the disputed instruction was not plain error.

## 2.  Harmless Error

¶43     Under harmless error review, Williams' challenge of the Superior Court's jury instructions on malice and malice aforethought is meritless. Although we believe plain error review is appropriate considering Williams' failure to object to the jury instructions before the Superior Court, we analyze Williams' dispute of the jury instructions under harmless error because of the constitutional implications that his argument represents.

¶44     In *Francis v. Franklin,* 471 U.S. 307 (1985), the United States Supreme Court gave the following overview of the governing doctrine:

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 21 of 37

2024 V.I. 27

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S., at 364. This "bedrock, 'axiomatic and elementary' [constitutional] principle," *id.* at 363, prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Sandstrom v. Montana, supra,* at 520-524; *Patterson v. New York*, 432 U.S. 197, 210, 215 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 698-701 (1975); *see also Morissette v. United States*, 342 U.S. 246, 274-75 (1952). The prohibition protects the "fundamental value determination of our society," given voice in Justice Harlan's concurrence in *Winship*, that "it is far worse to convict an innocent man than to let a guilty man go free." 397 U.S., at 372. *See Speiser v. Randall*, 357 U.S. 513, 525-26 (1958). The question before the Court in this case is almost identical to that before the Court in *Sandstrom*: "whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of . . . state of mind," 442 U.S., at 521, by creating a mandatory presumption of intent upon proof by the State of other elements of the offense.

The analysis is straightforward. The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes." *Id.* at 514. The court must determine whether the challenged portion of the instruction creates a mandatory presumption, *see id.* at 520-24, or merely a permissive inference, *see Ulster County Court v. Allen*, 442 U.S. 140, 157-63 (1979). A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

Mandatory presumptions must be measured against the standards of *Winship* as elucidated in *Sandstrom*. Such presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. *Patterson v. New York, supra,* at 215 ("[A] State must prove every ingredient of an offense beyond a reasonable doubt and . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"). *See also Sandstrom, supra,* at 520-24; *Mullaney v. Wilbur, supra,* at 698-701. A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. Such inferences do not necessarily implicate the concerns of *Sandstrom*. A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury. *Ulster County Court, supra,* at 157-63.

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 22 of 37

2024 V.I. 27

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). This analysis "requires careful attention to the words actually spoken to the jury . . . , for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom*, *supra*, at 514.

*Francis*, 471 U.S. at 313-15.

¶45    The United States Supreme Court has held that an instruction indicating that "[m]alice shall be implied" from specified circumstances (as provided in Georgia law) violated the *Sandstrom* line of cases:

> The challenged sentences are cast in the language of command. They instruct the jury that "acts of a person of sound mind and discretion are presumed to be the product of the person's will," and that a person "is presumed to intend the natural and probable consequences of his acts." These words carry precisely the message of the language condemned in *Sandstrom*, 442 U.S. at 515 ("The law presumes that a person intends the ordinary consequences of his voluntary acts."). The jurors "were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." *Id.* (emphasis added). The portion of the jury charge challenged in this case directs the jury to presume an essential element of the offense -- intent to kill -- upon proof of other elements of the offense -- the act of slaying another. In this way, the instructions "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ulster County Court v. Allen*, *supra*, at 156 (emphasis added).

*Francis*, 471 U.S. at 316.

¶46    This Court has reviewed murder instructions a number of times, and some versions of these instructions are clearly "permissive" inference instructions. *See, e.g., Saldana v. People,* 73 V.I. 649, 657 (V.I. 2020) ("The Superior Court further instructed the jury that they 'may infer malice

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 23 of 37

2024 V.I. 27

aforethought from circumstances that show a wanton intent to act, . . . regardless of consequences. If a killing is proved to have been accomplished with a deadly weapon, **malice may be inferred, but may not be inferred from that fact alone.**") (emphasis added); *Titre v. People*, 70 V.I. 797, 810 n.7 (V.I. 2019) (same); *Powell v. People*, 70 V.I. 745, 774 (V.I. 2019) ("[W]here the killing is proved to have been accomplished by a deadly weapon, **malice can be inferred** from that fact alone.") (emphasis added); *Ventura v. People*, 64 V.I. 589, 601 (V.I. 2016) (same); *Rivera v. People*, 64 V.I. 540, 552 (V.I. 2016) (same); *Nicholas v. People*, 56 V.I. 718, 731-32 (V.I. 2012) ("[M]alice aforethought . . . extends to and embraces generally the state of mind with which one commits a wrongful act. It may be inferred from the circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences. And 'where the killing is proved to have been accomplished by a deadly weapon, **malice can be inferred** from that fact alone.'") (emphasis added).

¶47     However, one version of the instruction given in this case differs from all the examples above because it does not simply state that malice "can be inferred" from the use of a weapon to accomplish a killing — in other words, that it is merely possible to draw such an inference in that circumstance — but instead told the jury "**[m]alice is inferred** when the killing is accomplished by the use of a weapon or other instrument in such a manner to naturally and probably cause death." (Emphasis added.) Essentially, the "malice is inferred" instruction informed the jury that the inference is automatically drawn in that instance. Such an instruction is similar to the one reviewed by the United States Supreme Court in *Yates v. Evatt*, 500 U.S. 391, 397 (1991), where the trial judge told the jury: "I tell you, however, that if the facts proven are sufficient to raise a presumption of malice, that presumption is rebuttable, that is, it is not conclusive on you, but it is rebuttable by

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 24 of 37

2024 V.I. 27

the rest of the evidence. I tell you, also, **that malice is implied or presumed** from the use of a deadly weapon. I further tell you that when the circumstances surrounding the use of that deadly weapon have been put in evidence and testified to, the presumption is removed. And it ultimately remains the responsibility for you, ladies and gentlemen, under all the evidence to make a determination as to whether malice existed in the mind and heart of the killer at the time the fatal blow was struck." *Id.* at 397 (emphasis added). The United States Supreme Court held that the instruction that "malice is implied or presumed" from "the use of a deadly weapon" was a "mandatory presumption" violating the principles announced in *Sandstrom* and *Francis*, and was unconstitutional. *Id.* at 402.

¶48     Here, the Superior Court at certain junctures told the jury that malice "can be inferred" but at other times told the jury that malice "is inferred" from the use of a weapon. We need not decide on this appeal whether the specific wording of the challenged jury instruction – that malice "is inferred" – created a mandatory presumption, because any error in that regard was obviated by the totality of other instructions in the Superior Court's overall charge to the jury emphasizing the People's obligation to prove each and every element of the crimes beyond a reasonable doubt, telling them in other instructions that malice can be (but is not required to be) inferred from the use of a weapon, and because such an error was, in Williams' case, harmless beyond a reasonable doubt.

¶49     Significantly, the harmless-error standard announced in *Chapman v. California*, 386 U.S. 18 (1967), states a reviewing court should not set aside an otherwise valid conviction if the court may confidently conclude, on the whole record, that the constitutional error in question was harmless beyond a reasonable doubt. Undeniably, this standard applies to an erroneous malice

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 25 of 37

2024 V.I. 27

instruction in a murder prosecution. *See Libby v. Duval,* 19 F.3d 733, 738 (1st Cir. 1994); *Polsky v. Patton,* 890 F.2d 647, 651-52 (3rd Cir. 1989); *Medina v. Matesanz,* 298 F.3d 98, 99 (1st Cir. 2002).

¶50     In *Rose v. Clark,* 478 U.S. 570, 576 (1986), a defendant appealed his murder convictions on the grounds that the trial court incorrectly instructed the jury on malice. Before remanding the case, the United States Supreme Court noted that the defendant had an opportunity to present evidence and argue in support of his innocence. The Court further recognized that the defendant was tried by an impartial jury and that the proceedings were supervised by an impartial judge. Aside from the deficient malice instruction, the Court also indicated that the trial court had clearly instructed the jury that it had to find respondent guilty beyond a reasonable doubt as to every element of both first- and second-degree murder. *See Yates,* 500 U.S. at 403-04 ("[T]o say that an error failed to 'contribute' to the ensuing verdict is not to say that the jury was totally unaware of that feature of the trial later held to be erroneous, but rather is to find that error unimportant in relation to everything the jury considered on the issue in question, as revealed in the record, making a judgment about the significance of the presumption to reasonable jurors when measured against the other evidence considered by those jurors independent of the presumption") (citations omitted).

¶51     Applying the harmless error standard announced by the United States Supreme Court in *Yates,* we conclude that the erroneous instruction did not prejudice Williams and amounted to harmless error because the record contained sufficient evidence from which the jury would have convicted Williams of second degree murder regardless of the inclusion of the challenged instruction in the charge to the jury.

**C.  Impropriety of Second Degree Murder and Voluntary Manslaughter Convictions**

¶52　　On appeal, Williams also challenges his convictions for second degree murder and voluntary manslaughter because he alleges that they are inconsistent with each other. Appellant's Br. 33. Although Williams waived this argument because he did not raise it below, we briefly expound on it for the sake of completeness as well as our belief that any alleged conflict among the verdicts can be resolved by vacating the voluntary manslaughter conviction pursuant to the Virgin Islands Double Jeopardy statute codified in 14 V.I.C. § 104.

¶53　　In his brief, Williams asserts the jury failed to find the malice needed for his second-degree murder conviction and impermissibly applied a malice standard rather than the concept of provocation in determining his voluntary manslaughter conviction.[12] Appellant's Br. 34-35.

---

[12] Presumably, Williams contends that the jury was unable to find the malice needed for his second-degree murder conviction because it also found him guilty of voluntary manslaughter which was a lesser-included offense charge and not a separate count in the amended information. Similarly, Williams presumably argues that the jury was unable to find the provocation needed for his voluntary manslaughter conviction because it also convicted him of second-degree murder which requires a finding of malice aforethought. Therefore, Williams essentially alleges that the jury should have convicted him of either second degree murder or voluntary manslaughter, but not both because voluntary manslaughter, listed as a lesser included offense on the verdict form, required some distinct evidence that could not be used to support a second-degree murder conviction, and possessed some elements that are not incorporated in the second-degree murder statute. *See Nicholas*, 56 V.I. at 733 ("[T]he essential element of voluntary manslaughter that distinguishes it from second degree murder is whether the killing was committed in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.) (citations omitted). However, this argument fails because a jury may convict a defendant of voluntary manslaughter even if his actions lack the provocation generally needed to sustain the charge. *See Hughes v. People*, 59 V.I. 1015, 1022 n.4 (V.I. 2013) ("[A] conviction for voluntary manslaughter as a lesser included offense may stand even absent evidence of sudden quarrel or heat of passion, as long as the evidence was sufficient to convict the defendant of the greater offense.") (citations omitted). In this case, the record contains sufficient evidence that Williams committed the second-degree murder of both Lammy and Javois. Specifically, Williams told numerous individuals he hated that Javois was dating Lammy and he wanted to rekindle his relationship with the latter although Lammy was no longer interested in him. Moreover, days before the incident, Williams texted Chandra Bolling that people did him bad, Lammy ceased their relationship because she was involved with other officers, and Lammy would get hers. Lastly, the physical evidence, a bullet casing recovered from the crime scene, also implicated Williams because it was linked to his police-issued weapon. Therefore, although the record fails to reveal the evidence needed to establish provocation for a voluntary manslaughter conviction, the jury could have legitimately convicted Williams of voluntary manslaughter because the record contains sufficient evidence to convict him of second-degree murder. Regardless, the Superior Court should have vacated Williams' voluntary manslaughter conviction on Double Jeopardy grounds.

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 27 of 37

2024 V.I. 27

Accordingly, Williams asserts that the two convictions must be dismissed because they are internally inconsistent. *Id.* We disagree.

¶54    Undoubtedly, a court may instruct a jury that if it does not find the defendant guilty of a greater offense, it may convict the defendant of a lesser included offense even if the information does not enumerate the lesser included offense. *United States v. Toledo*, 739 F.3d 562, 568-69 (10th Cir. 2014); V.I. R. CRIM. P. 31(c); FED. R. CRIM. P. 31(c); *United States v. Lasley*, 832 F.3d 910, 912-13 (8th Cir. 2016). *See People v. Hatcher*, No. SX-14-CR-131, 2020 WL 639387, at *3 (V.I. Super. Ct. Feb. 10, 2020) (unpublished) ("The basic principle is that when an indictment or information charges a greater offense it also charges all lesser included offenses. The majority of jurisdictions, including the federal courts, follow the principle that lesser included offenses need not be set forth as separate counts in the indictment or information [because] [a]n indictment or information charging an offense impliedly charges all lesser included offenses which would support conviction. . . . The Virgin Islands has also adopted the principle that an indictment or information which charges a greater offense also charges all lesser included offenses.") (citations omitted); *Asherman v. Meachum*, 739 F.Supp. 718, 722 (D. Conn. 1990) ("[O]n a trial on an indictment for murder, it was felt desirable, as far back as 1830, to make sure that the petit jury, in accordance with the common-law rule, could return a verdict of guilty of manslaughter if the proof warranted even though only murder would have been charged in the indictment.") (citations omitted); *United States v. Walkingeagle*, 974 F.2d 551, 554 (4th Cir. 1992) ("[A] court may submit an uncharged lesser-included offense to the jury") (citations omitted).

¶55    Moreover, American jurisprudence does not prevent a jury from adjudicating a defendant guilty of both a greater infraction and its concomitant lesser included offense if the jury finds

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 28 of 37

2024 V.I. 27

sufficient evidence from the record to do so. *See Gov't of the V.I. v. Josiah*, 641 F.2d 1103, 1108 (3rd Cir. 1981) ("A jury's finding of guilt on all elements of the greater offense is necessarily a finding of guilt on all elements of the lesser offense, since a lesser-included offense consists of some of the elements of the greater offense and does not require the proof of any element not present in the greater offense.") (citations omitted); *United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir. 2005) ("Although '[a] jury is generally instructed not to return a verdict on a lesser included offense once it has found the defendant guilty of the greater offense,' it is entirely appropriate for a judge to instruct a jury to render a verdict on a greater offense and its lesser included predicates.") (citations omitted); *United States v. Poole*, 545 F.3d 916, 920-22 (10th Cir. 2008) (explaining that a jury's guilty verdict for a greater offense and lesser included crime was not facially inconsistent or ambiguous because, following the jury's verdict, the trial court immediately implemented remedial measures by vacating the conviction for the lesser offense).

¶56 However, if a jury convicts a defendant of both a greater crime and its lesser included offense, the Double Jeopardy clause of the Fifth Amendment precludes a court from imposing sentence for both transgressions. *See United States v. Belt*, 516 F.2d 873, 875 (8th Cir. 1975) ("When, as here, the defendant is convicted of both a greater and lesser included offense, the conviction and sentence of the lesser included offense must be vacated."); *United States v. Howard*, 507 F.2d 559, 563 (8th Cir. 1974) ("A defendant may not be charged and convicted of both a major offense and a lesser included offense arising out of the same facts.") (citations omitted); *United States v. Schaff*, 838 F.Supp.2d 1376, 1380 (S.D. Ga. 2011) ("The proper remedy for convictions on both greater and lesser included offenses is to vacate the conviction and the

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 29 of 37

2024 V.I. 27

sentence of the lesser included offense.") (citations omitted); *Jose*, 425 F.3d at 1247 ("Should a jury find a defendant guilty of both the greater and lesser included offenses within the same indictment, *Rutledge* counsels that the district court not enter a final judgment of conviction on both offenses, unless Congress clearly indicates that it intended to allow multiple punishments. . . . Even if the district court does not impose sentence on the lesser included offenses, as was the case here, the bare existence of the other convictions may have potentially adverse collateral consequences, such as delaying eligibility for parole or enhancing a sentence for a future conviction under a recidivist statute. . . . Thus, when a jury convicts on both the greater and lesser included offenses, absent a clear indication by Congress that it intended to allow punishment for both offenses, the district court should enter a final judgment of conviction on the greater offense and vacate the conviction on the lesser offense.") (citations omitted).

¶57    The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution states no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *Williams v. People*, 56 V.I. 821, 831 (V.I. 2012). Generally, when a defendant's actions violate two different criminal statutes, the Double Jeopardy Clause dictates that he cannot be sentenced for the same offense or for the lesser and greater included infractions of the same predicate offense. *Id.* In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the United States Supreme Court delineated a test to ascertain if two crimes were the same. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires a proof of fact which the other does not." *Id.* However, the *Blockburger* test "is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose[,] the rule should not be controlling

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 30 of 37

2024 V.I. 27

where, for example, there is a clear indication of contrary legislative intent." *Williams*, 56 V.I. at 831 (citations omitted).

¶58    Locally, the Virgin Islands double jeopardy statute is codified in 14 V.I.C. § 104. Section 104 proclaims: "an act or omission which is made punishable in different ways by different provisions of this Code may be punished under any such provisions but, in no case, may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." By its terms, section 104 proscribes multiple punishments when a defendant's actions within a single occurrence violate multiple local laws. However, the prohibition does not apply when the legislature intends to impose multiple punishments for certain infractions even when those infractions occurred in a single transaction. Essentially, while double jeopardy under the Fifth Amendment targets identical crimes, section 104 focuses on all crimes emanating from a single transaction. Thus, section 104 allows a defendant to be charged and convicted of multiple crimes arising from a single transaction, but declares that a defendant can only be sentenced for one offense unless the legislature intends otherwise. *Williams*, 56 V.I. at 832.

¶59    In *Titre v. People*, 70 V.I. 797 (V.I. 2019), we abrogated the former merger-and-stay remedy and decided that vacatur of ancillary convictions as well as their accompanying sentences, which emanate from crimes completed in a single transaction, was the best remedy for the Virgin Islands. Under the former merger-and-stay procedure, local courts sentenced a defendant for one

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 31 of 37

2024 V.I. 27

crime and stayed[13] convictions and/or sentences for secondary crimes that were completed in a single course of action or a single act. *Titre*, 70 V.I. at 806.

¶60    Before being abrogated, the merger-and-stay procedure contrasted with the vacatur remedy sanctioned by the United States Supreme Court for double jeopardy violations. See *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996) (To avoid collateral consequences, the Supreme Court opined the lower court should "exercise its discretion to vacate . . . the underlying convictions' as well as the concurrent [or stayed] sentences[s] based upon [them].") Essentially, under the merger-and-stay doctrine, local courts merged convictions and stayed sentences for a suspect's secondary transgressions that arose in a single occurrence. Contrastingly, the federal judiciary vacated identical convictions and their requisite sentences for double jeopardy violations. However, given the confusion merger-and-stay created for territorial courts, we consequently adopted vacatur as the remedy for violations of section 104. *See Celestine v. People*, 73 V.I. 500, 511 (V.I. 2020) (discussing merger and stay procedure); *Carty v. People*, 76 V.I. 345 411 (V.I. 2022) (discussing merger and stay procedure); *Roberts v. People*, 76 V.I. 555, 576-78 (V.I. 2022) (same).

¶61    Here, the jury convicted Williams of both second-degree murder and voluntary manslaughter.[14] J.A. Vol. I 52. On appeal, Williams claims that those convictions must be vacated because they are internally inconsistent. However, inconsistent verdicts alone cannot be grounds for vacatur. *See Fontaine v. People*, 62 V.I. 643, 652 (V.I. 2015); *People v. Thompson*, 57 V.I.

---

[13] BLACK'S LAW DICTIONARY 1548 (9th ed. 2009) (defining "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like" and "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding[; a]lso termed stay of execution").

[14] The jury also convicted Williams of the first degree assaults of both Lammy and Javois. However, the Superior Court dismissed those convictions pursuant to *Titre*. J.A. Vol. I 10. Therefore, we conclude that the same resolution concerning Williams' argument for his convictions for voluntary manslaughter is appropriate.

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 32 of 37

2024 V.I. 27

342, 351 (V.I. 2012) ("[C]riminal convictions based on inconsistent verdicts should be upheld as long as there is sufficient evidence to support the convictions."); *Lemke v. Ryan*, No. CV-09-1059-PHX-DGC (JRI), 2010 WL 6089786, at *10 (D. Ariz. Oct. 7, 2010) (unpublished) ("Petitioner does not suggest that his conviction for theft would be logically inconsistent with a conviction for armed robbery. Arguably, as lesser and greater offenses, the jury could have returned guilty verdicts as to both.") (citations omitted); *United States v. Emly*, 747 F.3d 974, 981 (8th Cir. 2014) ("A jury's guilty verdict on both a greater and lesser included offense is not plainly inconsistent.") (citations omitted). Therefore, we reject Williams' inconsistency argument.

¶62    Importantly, voluntary manslaughter is a lesser included offense of second degree murder. *See Codrington v. People*, 57 V.I. 176, 194 (V.I. 2012); *see also Freeman v. People*, 61 V.I. 537, 543 (V.I. 2014); *Hughes v. People*, 59 V.I. 1015, 1022 n.4 (V.I. 2013); *Hatcher*, 2020 WL 639387 at *4 (explaining that the majority of jurisdictions, including the Virgin Islands, recognizes voluntary manslaughter as a lesser included offense of second degree murder) (citations omitted); *United States v. Quintero*, 21 F.3d 885, 889 (9th Cir. 1994) ("Voluntary manslaughter is a lesser included offense within the crimes of first and second degree murder.") (citations omitted); *United States v. Scafe*, 822 F.2d 928, 932 (10th Cir. 1987) ("Voluntary manslaughter is a lesser included offense of murder."); *United States v. Scott*, 954 F.3d 74, 107 (2nd Cir. 2020) (explaining that first degree manslaughter is a lesser included offense of second degree murder) (citations omitted). As a lesser included offense committed in the same transaction as the greater infraction, the Superior Court should have vacated Williams' conviction and sentence for voluntary manslaughter pursuant to our ruling in *Titre*. Failure to do so was error. Accordingly, we remand the matter to the Superior

Court with instructions to vacate Williams' conviction and sentence for voluntary manslaughter in order to comport with our decision in *Titre*.

### D. Assault Convictions

¶63     On appeal, Williams argues his first-degree assault convictions must be vacated because they require the jury to substitute use of a firearm for malice. Because the Superior Court correctly dismissed both first degree assault convictions pursuant to our ruling in *Titre*, we need not expound on that issue.

### E. Convictions for Use of a Dangerous Weapon During the Commission of a Violent Crime

¶64     On appeal, Williams also alleges that his convictions for using a dangerous weapon during the commission of a violent crime are impermissible because 14 V.I.C. § 2251[15] excludes law enforcement officers. Appellant's Br. 36. However, this argument is unpersuasive because

---

[15] In pertinent part, 14 V.I.C. § 2251 provides as follows:

"(a) Whoever—(1) has, possesses, bears, transports, carries or has under his proximate control any instrument or weapon of the kind commonly known as a blackjack, billy, sandclub, metal knuckles, bludgeon, switchblade knife or gravity knife; or (2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall—(A) be fined $5,000 and imprisoned not more than five (5) years; or (B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence. (b) For purposes of subsection (a) of this section, the term 'switchblade knife' means any knife which has a blade which opens automatically by hand pressure applied to a button, spring, or other device in the handle of the knife; and the term 'gravity knife' means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device. (c) Notwithstanding the provisions of this section, nothing contained herein shall prohibit the use of electric weapons or devices by peace officers in the conduct of their lawful duties or persons licensed to carry an electric weapon or device. The Virgin Islands Police Department and the Virgin Islands Department of Justice shall jointly promulgate regulations and establish policies pertaining to the use and licensing of electric weapons and devices."

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 34 of 37

2024 V.I. 27

Williams was convicted under subsection (a)(2)(B)[16] of the statute, which covers all offenders, including law enforcement officers, who use a dangerous weapon during the commission of a violent crime. Presumably, Williams' argument refers to subsection (c), which excludes peace officers from the statute's provisions when they are executing their legally sanctioned duties or legitimately acting within the scope of their employment. Yet, it is beyond our understanding how the commission of second-degree murder constitutes a legally valid duty for which Williams is absolved under the auspices of section 2251. Therefore, we affirm Williams' convictions for use of a dangerous weapon during the commission of a violent crime. *See United States v. Acosta*, 470 F.3d 132, 135-36 (2nd Cir. 2006) ("The use of a gun by a police officer to rob and intimidate suspected drug dealers, therefore violates § 242's prohibition on 'the use, attempted use, or threatened use of a dangerous weapon' in the course of willfully depriving a person of his constitutional rights under color of law."); *United States v. Muxlow*, 759 F.Supp. 1258, 1264 (E.D. Mich. 1991) (explaining that a former police officer convicted of possession of cocaine with the intent to distribute was subject to a sentence enhancement because he carried his police-issued weapon during the commission of the crime despite lawfully having the weapon as a police officer and the weapon was not used to facilitate the crime); *State v. White*, 988 N.E.2d 595, 612 (Ohio Ct. App 2013) (explaining that criminal prosecution of police officers who commit crimes while on duty is not novel).

¶65     Lastly, at the time of the murder of Lammy and Javois, Williams was not pursuing or engaged in a lawful police action of protecting lives or property. Therefore, he was acting outside

---

[16] 14 V.I.C. § 2251(a)(2)(B) does not implicate unauthorized possession of a dangerous or deadly weapon during the commission of violent crime. Rather, the subsection criminalizes mere possession of a dangerous weapon during the commission of a violent crime. *Estick v. People*, 62 V.I. 604, 613 n. 3 (V.I. 2015).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 35 of 37

2024 V.I. 27

the scope of his employment as a law enforcement officer when he engaged in self-serving criminal conduct in violation of the law and his oath of office by committing the murder of two human beings. Accordingly, we affirm Williams' convictions under 14 V.I.C. §2251(a)(2)(B).

## F. Stalking Conviction

¶66 Finally, on appeal, Williams challenges his conviction for stalking because, according to Williams, the purpose of the law is to prevent death but, in this case, the victim died. Appellant's Br. 41. The Virgin Islands stalking statute is codified in 14 V.I.C. § 2072(a).[17, 18]

¶67 It is axiomatic that the first step in statutory interpretation is to determine whether the statutory language is plain and unambiguous. If it is unambiguous, no further interpretation is required. *Smith v. Henley*, 67 V.I. 965, 972 (V.I. 2017). Although Williams alleges that the parameters of section 2072 preclude its enforcement if the victim dies, there is nothing in the statute that indicates it is unenforceable if a victim dies. Second, the statute fails to delineate the purpose — to prevent death — that Williams suggests. Third, we reject as absurd and without foundation Williams' assertions that death precludes enforcement of a statute with the expressed intent to protect individuals from being afraid and fearful of others whose goal is to potentially intimidate and scare the victims. Fourth, the crime of stalking was committed prior to the victim's

---

[17] "A person is guilty of the crime of stalking who purposely and repeatedly follows another person and engages in a course of conduct or makes a credible threat with the intent of annoying or placing that person in reasonable fear of death or bodily harm or injury. Any person convicted of the crime of stalking shall be imprisoned for a period not to exceed 18 months, or may be fined up to $7,500, or both." 14 V.I.C. § 2072(a).

[18] Inherent in the crime of stalking is harassment which is defined by the Virgin Islands Code. "Harassment means more than one act of willful and malicious conduct, however brief, that happens within a year including cyberstalking, sexual harassment and stalking aimed at a specific person committed with the intent to cause fear, verbal and/or physical intimidation, abuse or damage to property and which does in fact cause fear, intimidation, verbal or physical abuse or damage to property; or an act that by force, threat or duress causes another to involuntarily engage in sexual relations, or constitutes a violation or this subchapter." 14 V.I.C. § 111(2).

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 36 of 37

2024 V.I. 27

death. Fifth, despite distinct differences between the federal and local stalking statutes, there are sufficient similarities among them that enable us to examine the federal stalking statute for guidance in interpreting our local stalking statute (the federal law allows for a sentence enhancement if a victim perishes because of a defendant's stalking).[19] *See United States v. Gonzalez*, 905 F.3d 165, 187 (3rd Cir. 2018) (explaining that jury instructions were proper pertaining to several crimes, including interstate stalking, with provisions for sentence enhancements if the victim's death resulted because of the crime). Therefore, because section 2072 is unambiguous on its face and other jurisdictions, including the federal judiciary, have not barred prosecutions for stalking when the victim dies, Williams' contention concerning the impropriety of his stalking conviction because the victim died is disingenuous and specious. Undeniably and irrefutably, the crime of stalking was committed prior to the victim's demise. The charging of the stalking after the victim's death, based on acts committed prior thereto, does not negate commission of the crime. An opposite conclusion – that prosecutions for stalking are not permitted when the victim of that offense is eventually killed by the stalker – would be an outlandish and preposterous proposition, without any foundation in the language that the Legislature employed in the statute. Longstanding authority therefore forecloses us from reaching such an absurd result. *In re Application of Shores*, 59 V.I. 994, 1001 n.5 (V.I. 2013) (noting that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available," and that "constructions that produce odd or absurd results or that are inconsistent with common sense" are to be eschewed) (citing cases, including *Griffin v.*

---

[19] Although the Virgin Islands stalking statute is not entirely identical to its federal counterpart, similarities exist between subsection (a) of section 2072 of the local statute and subsection 2(a) of section 2216A of the federal statute that enable us to compare both. Specifically, both subsections of each statute refer to perpetrator placing the victim in reasonable fear of death or bodily harm.

*Williams v. People*
S. Ct. Crim. No. 2019-0068
Opinion of the Court
Page 37 of 37

2024 V.I. 27

*Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) and *Gilbert v. People*, 52 V.I. 350, 365 (V.I. 2009)).

¶68     Accordingly, we affirm Williams' conviction for stalking despite the victim's death.

### V.     CONCLUSION

¶69     To conclude, we find no error in the Superior Court's jury instructions on malice or malice aforethought. Furthermore, we affirm Williams' stalking conviction and his two convictions for second degree murder, but we will not address his first degree assault convictions because the Superior Court dismissed them pursuant to our holding in *Titre*. Finally, we remand this matter to the Superior Court with instructions to vacate Williams' convictions and sentences for voluntary manslaughter pursuant to our ruling in *Titre*.

**Dated this __16__ day of _August_ 2024**

**BY THE COURT:**

**IVE ARLINGTON SWAN**
Associate Justice

**ATTEST:**
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** _/s/ Kobe Potter_
    **Deputy Clerk**

**Date:** _August 16, 2024_