IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
September 10, 2025 01:30 PM
SCT-Civ-2024-0119
**DALILA E. PATTON, ESQUIRE**
**ACTING CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

RANGER AMERICAN OF THE VIRGIN ISLANDS, INC.,

    Appellant/Defendant,

v.

ELVIS PEDRO,

    Appellee/Plaintiff.

)
)
)
)
)
)
)
)
)
)

**S. Ct. Civ. No. 2024-0119**
Re: Super. Ct. Civ. No. 294/1999 (STX)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Sigrid M. Tejo

Argued: July 8, 2025
Filed: September 10, 2025

Cite as: 2025 VI 20

BEFORE: **IVE ARLINGTON SWAN**, Associate Justice; **HAROLD W.L. WILLOCKS**, Associate Justice; and **CAROL THOMAS-JACOBS**, Designated Justice.[1]

APPEARANCES:

**Eugenio W.A. Geigel-Simounet, Esq. (Argued)**
**Ann Cecile O'Neill, Esq.**
GS Law Offices P.C.
St. Croix, U.S.V.I.
    *Attorney for Appellant/Defendant,*

**Rhea R. Lawrence, Esq. (Argued)**
**Blake M. Feamster, Esq.**
Lee J. Rohn and Associates, LLC
St. Croix, U.S.V.I.
    *Attorney for Appellee/Plaintiff.*

## OPINION OF THE COURT

**WILLOCKS, Associate Justice.**

---

[1] Pursuant to 4 V.I.C. § 24(a), the Honorable Carol Thomas-Jacobs was appointed as a Designated Justice in this matter due to the recusal of the Honorable Chief Justice Rhys S. Hodge and the Honorable Associate Justice Maria M. Cabret.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 2 of 28

¶ 1    Appellant Ranger American of the Virgin Islands, Inc. ("RAVI") appeals from a judgment entered on May 21, 2024 by the Superior Court of the Virgin Islands ("Superior Court") following a jury verdict that awarded Appellee Elvis Pedro ("Pedro") $25,000 in economic losses (lost wages), $0 damages for non-economic losses, and $275,000 in punitive damages. In this appeal, RAVI challenges only the judgment for punitive damages, arguing that it was "an unconstitutionally excessive verdict" and that this Court should "reduce the punitive damages award to an amount that conforms to the requirements of the Due Process Clause."

## I. BACKGROUND[2]

¶ 2    In 1997, while working full-time as a court marshal at the Territorial Court of the Virgin Islands (now known as the Superior Court), Pedro began working part-time for RAVI to perform security work on St. Croix. Specifically, he was only available to work for RAVI after 5:00 p.m., following the end of his court marshal duties. As a part-time employee, Pedro did not receive vacation or sick leave benefits from RAVI.

¶ 3    At that time, RAVI contracted with a variety of clients, such as the Kmart store in Frederiksted ("Kmart West") and the Pueblo Supermarket in La Reine ("Pueblo La Reine"), to provide both armed and unarmed security details. RAVI created and modified its work schedule for security guards based on its clients' requests and needs, as well as the availability and qualifications of its guards. Initially, RAVI scheduled Pedro to work the night shift at the Kmart

---

[2] To construct a more comprehensive and accurate background, this Court takes judicial notice of the trial court's docket and papers in the underlying case. *See Cianci v. Chaput*, 64 V.I. 682, 690 n.2 (V.I. 2016) (recognizing that courts may take judicial notice of other courts' dockets and papers); *cf. King v. Appleton*, 61 V.I. 339, 348 (V.I. 2014) ("[T]he Superior Court may take judicial notice of the existence of a document that has been filed with it in another proceeding.") (internal quotation marks and citation omitted).

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 3 of 28

West post. At some point, Kmart West requested RAVI to transfer Pedro from working that post. RAVI then scheduled Pedro to work the night shift at the Pueblo La Reine post starting in July 1998.

¶ 4    In September 1998, RAVI scheduled Pedro to work a few nights per week. Later that month, Hurricane Georges passed through the U.S. Virgin Islands. Afterward, RAVI scheduled Pedro for a few additional shifts, but he was never scheduled to work again after October 8, 1998.

¶ 5    At first, when RAVI stopped scheduling Pedro to work, Pedro called his RAVI supervisor Robin Richards ("R. Richards") to inquire why "[he] [ha]sn't been receiving any work or any schedule." R. Richards told him he had "no idea." After approximately two and a half months of not working for RAVI, Pedro asked R. Richards to try to find out why RAVI stopped scheduling him. When R. Richards told Pedro he "do[es]n't know," Pedro attempted to contact his RAVI manager Delroy Richards ("D. Richards")—who was responsible for scheduling—by going to the RAVI office to inquire why he had not been scheduled to work. However, despite "waiting [for] a while," Pedro was unable to speak with D. Richards that day because D. Richards was busy. This was Pedro's only attempt to contact D. Richards at the RAVI office.

¶ 6    Thereafter, Pedro tried to contact D. Richards by phone multiple times, but was unsuccessful. It was only after Pedro obtained D. Richards' home phone number from R. Richards that Pedro was able to speak with D. Richards again and inquire why he had not been scheduled to work. However, according to Pedro, D. Richards was rude and disrespectful, and he failed to respond to Pedro's inquiry. That was the last time Pedro spoke with D. Richards. Ultimately, despite Pedro's repeated efforts, RAVI never provided him with an explanation.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 4 of 28

¶ 7　In June 1999, Pedro filed a complaint against RAVI in an action for constructive discharge under the Virgin Islands Wrongful Discharge Act ("VIWDA").[3] Subsequently, in May 2008, the Superior Court entered an order granting RAVI's motion for summary judgment and denied Pedro's motion for leave to file an amended complaint to assert a direct claim for wrongful discharge under VIWDA. In Pedro's appeal of that order, we held that "[a]lthough the Superior Court did not err in granting summary judgment on Pedro's constructive discharge claim, it erred in holding that Pedro's proposed amended complaint was futile" and therefore reversed the order in part and remanded the case for further proceedings. *Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511 (V.I. 2015).

¶ 8　On November 21, 2016, Pedro filed a first amended complaint. In the first amended complaint, Pedro alleged that RAVI wrongfully discharged him "in violation of the wrongful discharge laws of the Virgin Islands" and that "[a]s a result, [Pedro] has suffered loss of income,

---

[3] The VIWDA provides, in pertinent part, that unless modified by union contract, an employer may dismiss any employee:

> (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer; (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business; (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties; (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed; (5) who performs his work assignments in a negligent manner; (6) whose continuous absences from his place of employment affect the interests of his employer; (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer; (8) who is dishonest; or (9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

24 V.I.C. § 76(a). "Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged," provided that the employee was not terminated "as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship." 24 V.I.C. § 76(c).

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 5 of 28

loss of reputation, loss of capacity to earn income, mental anguish, suffering and loss of enjoyment of life, all of which are expected to continue into the foreseeable future." Pedro sought "damages as they may appear and for pre and post judgment interest and for costs and fees and for such other relief as th[e] court deems fair and just."

¶ 9     On May 13, 2024, this matter came before the court for jury selection and subsequently, a jury trial took place from May 14, 2024 through May 17, 2024. At trial, the jury heard testimony from the following witnesses: Pedro, R. Richards, Angel Morales, and D. Richards. Following the close of evidence and closing arguments, the court read its final jury instructions to the jury. Per the jury verdict form, the six-member jury unanimously found in favor of Pedro on his wrongful termination claim against RAVI and awarded Pedro: $25,000 for lost wages;[4] $0 damages for past and future mental anguish, suffering, and loss of enjoyment of life; and $275,000 in punitive damages. On May 21, 2024, the Superior Court entered a judgment ("May 21, 2024 Judgment") in accordance with the jury's verdict.

¶ 10    On June 17, 2024, RAVI filed a motion to alter or amend judgment to set aside or reduce the punitive damages award pursuant to Rule 59(e) of the Virgin Islands Rules of Civil Procedure

---

[4] At trial, Pedro indicated that he was capping his lost wages damages to losses sustained up to 2017. Subsequently, during the court's consultation with RAVI and Pedro regarding the final jury instructions, both parties agreed to language capping lost wages to "August 1, 2017, or to such a date as when he obtained substantially equivalent employment, but no later than August 1, 2017."

Thus, the court provided the jury, *inter alia*, with the following instructions on compensatory damages pertaining to Pedro's claim for lost wages:

> Pedro is claiming the following amounts of compensatory damages: A. Back pay or lost wages. In determining back pay, you must calculate the amount of pay that Pedro would have earned had he not been wrongfully discharged by Ranger American from the date of discharge, October 8, 1998, to such date when he obtained other regular and substantially equivalent employment but no later than August 1st, 2017. The above calculation is subject at all times to Pedro's duty to mitigate damages.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 6 of 28

("Civil Rule 59(e)"). This motion was fully briefed, and the parties appeared before the court for oral arguments on August 30, 2024. When the court failed to dispose of RAVI's June 17, 2024 motion within 120 days after the date the motion was filed, the motion was deemed denied for purposes of appeal under Rule 5(a)(4) of the Virgin Islands Rules of Appellate Procedure ("Appellate Rule 5(a)(4)").[5]

¶ 11     On December 13, 2024, RAVI filed a timely motion for extension of time to file a notice of appeal[6]—to extend the deadline by three additional days. In its motion, RAVI explained that

---

[5] Appellate Rule 5(a)(4) provides in relevant part:

> If any party timely files in the Superior Court a motion for judgment as a matter of law; to amend findings or make additional findings; for a new trial; to alter or amend the judgment or order; or (if filed within 28 days) for relief from the judgment or order, the time for filing the notice of appeal for all parties is extended until 30 days after entry of an order disposing of the last such motion; provided, however, that the failure to dispose of any motion by order entered upon the record within 120 days after the date the motion was filed shall constitute a denial of the motion for purposes of appeal.

> V.I. R. App. P. 5(a)(4).

On January 27, 2025, the Superior Court entered an order denying RAVI's June 17, 2024 motion to alter or amend judgment because "[Appellate] Rule 5(a)(4)'s 120-day provision denying the motion for purposes of appeal divested the Superior Court of jurisdiction to rule on the post-trial motion once the 120 days expired."

[6] The 120-day period for the Superior Court to dispose of RAVI's motion expired on Wednesday, October 16, 2024. In other words, the Superior Court had up until October 16, 2024 to enter an order adjudicating RAVI's motion, otherwise RAVI's motion was deemed denied on the 121st day—on Thursday, October 17, 2024. *See* V.I. R. App. P. 16(b) ("For purposes of proceedings in the Supreme Court, in computing any period of time prescribed or allowed by these Rules, by an order of the Court, or by any applicable statute, **the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included,** unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the Clerk of the Supreme Court inaccessible, in which event the period runs until the next day which is not one of the aforementioned excluded days.") (emphasis added).

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 7 of 28

"[i]mmediately upon filing its [Civil] Rule 59(e) motion Counsel took good faith efforts to place the notice of appeal deadline on his electronic calendar to signal the expiration of the 120-day period, but the alert notification for the additional 30-day filing deadline (automatic thirty-day reminder) did not generate" and "Counsel inadvertently neglected to notice this until December 12, 2024, late in the afternoon hours." The Superior Court subsequently entered an order on January 23, 2025 granting RAVI's motion for extension and extended the deadline to December 16, 2024 for RAVI to file a notice of appeal.

¶ 12    On December 16, 2024, RAVI filed its notice of appeal.

## II. DISCUSSION

### A. Jurisdiction

¶ 13    The Revised Organic Act of 1954 provides this Court with appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law. . . ." 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court [of the Virgin Islands], or as otherwise provided by law." 4 V.I.C. § 32(a). An

---

Under Rule 5(a)(1) of the Virgin Islands Rules of Appellate Procedure, "[i]n a civil case in which an appeal is permitted by law as of right from the Superior Court to the Supreme Court, the notice of appeal required by Rule 4 shall be filed with the Clerk of the Supreme Court within 30 days after the date of entry of the judgment or order appealed from . . . ." V.I. R. APP. P. 5(a)(1). Thus, the deadline for RAVI to timely file its notice of appeal with this Court was Monday, November 18, 2024 since the 30-day period expired on Sunday, November 17, 2024. *See* V.I. R. APP. P. 16(b).

Under Rule 5(a)(8) of the Virgin Islands Rules of Appellate Procedure, RAVI was authorized to file a motion with the Superior Court to "extend the time for filing a notice of appeal . . . not later than 30 days after the expiration of the time prescribed by this Rule 5(a) . . . ." V.I. R. APP. P. 5(a)(8). Thus, the deadline for RAVI to timely file its motion to extend with the Superior Court was Thursday, December 19, 2024. *See* V.I. R. APP. P. 16(b).

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 8 of 28

"order that disposes of all claims submitted to the Superior Court [of the Virgin Islands] is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)). Because the Superior Court's May 21, 2024 Judgment was a final judgment that resolved all the claims submitted for adjudication in the underlying matter and because RAVI's ensuing motion to alter or amend judgment was deemed denied by operation of Appellate Rule 5(a)(5), this Court has jurisdiction over this appeal.

### B. Overview of Issues

¶ 14    On appeal,[7] RAVI argues that the Superior Court erred when "it failed to carry out its mandatory duty to review the punitive damages award for its constitutionality to determine as a matter of law that the law does not permit the award—as it is an unconstitutionally excessive verdict" and "it failed to carry out its mandatory duty to correct the unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." As such, RAVI concludes that this Court should (1) "reverse the Superior Court's Order denying Ranger's Rule 59(e) motion to alter or amend the judgment" seeking to set aside the punitive damages award; (2) "vacate the award of punitive damages against it" ; and (3) "reduce the punitive damages award to an amount that conforms to the requirements of the Due Process Clause."

¶ 15    In his appellee's brief, Pedro argues that RAVI's appeal "should be dismissed as untimely because the Superior Court erred in granting [RAVI] an extension of time." Pedro further argues that "[e]ven if the Court does not dismiss this appeal as untimely, [RAVI] fails to meet its

---

[7] In its appellant's brief, RAVI listed the following "statement of the issues":

1. Whether the jury's verdict award of punitive damages entered by the Court in its Judgment Order is unconstitutionally excessive as a matter of law?

2. Whether the Court's entering and upholding the jury's award of punitive damages without a constitutional reduction violated Appellant's due process rights?

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 9 of 28

burden to demonstrate that the punitive damages award is unconstitutionally excessive, such that [RAVI] is entitled to a reduction to 'the maximum constitutionally permissible limit.'" As such, Pedro concludes that "this Court should dismiss this appeal or affirm the Superior Court's punitive damages award."

¶ 16    In its reply, RAVI argues that the Superior Court did not err in granting the extension of time. RAVI also reiterates its argument that the punitive damages award was unconstitutionally excessive.

### C. Standard of Review

¶ 17    The standard of review for examining the Superior Court's application of law—including constitutional questions—is plenary, while factual findings are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also, Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013) (citing *St. Thomas-St. John Bd. of Elections*, 49 V.I. at 329). "Clear error is a very deferential standard; an appellate court should only reverse a factual determination as being clearly erroneous if it is completely devoid of minimum evidentiary support or ... bears no rational relationship to the supportive evidentiary data." *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012) (internal quotation marks and citations omitted).

¶ 18    Furthermore, this Court reviews the constitutionality of a punitive damages award de novo.[8] *See R.J. Reynolds Tobacco Co. v. Gerald*, 76 V.I. 656, 678 (V.I. 2022) (citing *Brathwaite v. Xavier*, 71 V.I. 1089, 1095 (V.I. 2019)).

---

[8] The fact that RAVI's motion was deemed denied by operation of Appellate Rule 5(a)(4) has no bearing on the standard of review with respect to RAVI's claim that the punitive damages award is unconstitutionally excessive. The United States Supreme Court "has held that such claims [] warrant plenary review without any deference to the trial court." *Atlantic Human Res. Advisors, LLC v. Espersen*, 76 V.I. 583, 626 (V.I. 2022).

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 10 of 28

### D. Timeliness of Appeal

¶ 19    At the outset, this Court addresses Pedro's argument that we should not "exercise jurisdiction over this appeal because the Superior Court improperly granted [RAVI's] Motion for Extension of Time to File Notice of Appeal."[9] Specifically, Pedro points to the Superior Court's failure—in its January 23, 2025 order granting RAVI's motion for extension—"to explain how [RAVI] made the required showing of good cause warranting an extension of time, which is reversible error," and that, in fact, RAVI "failed to meet its burden to demonstrate that it is entitled to an extension of time."

¶ 20    However, Pedro never sought reconsideration or appealed from the Superior Court's January 23, 2025 order. Indisputably, Pedro was obliged to raise his objection to that order in time for the Superior Court to address it, so that the Superior Court could take whatever action, if any, it might deem necessary in the first instance. *Williams*, 2024 VI 27, ¶25 (citing *Ubiles v. People*, 66 V.I. 572, 583 (V.I. 2017)). Yet, Pedro opted instead to challenge the order for the first time on appeal. But as we have previously admonished, "we are a court of review, not of first view." *Lewis v. Rogers*, 73 V.I. 592, 599 (V.I. 2020) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). *See also V.I. Water & Power Authority v. Cyprian*, 78 V.I. 617, 622 (V.I. 2023) (observing that it is generally "inappropriate for this Court to consider . . . issues in the first instance, since this would effectively 'transform th[e] Court from a court of review to a court of first view'") (quoting *Espersen*, 76 V.I. at 626). Further, we note that the deadline for Pedro to have filed a notice of appeal from the Superior Court's January 23, 2025 order in this case had already expired by the

---

[9] On February 24, 2025, Pedro filed a motion to dismiss appeal as untimely before this Court. This motion has been fully briefed and remains pending.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 11 of 28

time he filed his appellee's brief on May 22, 2025. *See* V.I. R. App. P. 5(a)(3) ("If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by statute or by this Rule, whichever period last expires."). We thus conclude that Pedro's argument—that this appeal should be dismissed as untimely because no good cause existed to warrant an extension for RAVI to file its notice of appeal—is deemed waived.[10] *See Williams*, 2024 VI 27, at ¶25 (issues

---

[10] Alternatively, even if this argument was not waived, it still fails on the merits. Given that the underlying lawsuit has been ongoing for over 25 years, in the interest of judicial economy, we exercise our discretion to make the good cause determination in the first instance rather than electing to remand the matter to the Superior Court. *See Mosler v. Gerace*, 78 V.I. 649, 665 (V.I. 2024) (noting that the underlying lawsuit has been pending for nearly 20 years and thus conducted the *Banks* analysis in the first instance rather remanding to the trial court).

We have previously held that "excusable neglect" and "good cause" are "essentially synonyms." *Montgomery v. Virgin Grand Villas St. John Owners' Ass'n*, 71 V.I. 1119, 1127 (V.I. 2019) (citing *Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 713 (V.I. 2010)). "The determination 'is at bottom an equitable one' where the court should take into account 'all relevant circumstances surrounding [the] omission . . . includ[ing] . . . the danger of prejudice [to the opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Id.* (quoting *Brown v. People*, 49 V.I. 378, 383 (V.I. 2008) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc.*, 507 U.S. 380, 395 (1993)) (internal quotation marks omitted)); *see also Fuller v. Browne*, 59 V.I. 948, 954 (V.I. 2013) (same). "However, 'the reason for the delay is the most important of [these] factors,' and '[e]ven where there is no prejudice, impact on judicial proceedings, or trace of bad faith, the favorable juxtaposition of these factors does not excuse the delay where the proffered reason is insufficient.'" *Id.* (quoting *In re Sheedy*, 875 F.3d 740, 744 (1st Cir. 2017) (collecting cases) (internal quotation marks omitted)).

Here, taking all relevant circumstances into account, we conclude that RAVI met its burden of demonstrating good cause or excusable neglect for an extension of time to file its notice of appeal. RAVI made good faith efforts to comply with the deadline by: (i) calendaring the expiration of the 120-day period; (ii) upon noticing that the automatic 30-day reminder failed to generate on his calendar, RAVI filed a timely motion for extension; (iii) RAVI expeditiously filed its notice of appeal within three days of filing its motion for extension. Additionally, the length of the delay was brief—RAVI filed its notice of appeal approximately one month after the initial 30-day period expired. *See supra*, note 6. Lastly, we reiterate our longstanding instructions "that the preference is to decide cases on their merits, [and] that any doubts should be resolved in favor of this preference . . . ." *Fuller*, 59 V.I. at 956 (quoting *Spencer v. Navarro*, 2009 V.I. Supreme LEXIS 25, at *9 (V.I. Apr. 8, 2009) (unpublished)); *see Powell v. FAM Protective Servs., Inc.*, 72 V.I.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 12 of 28

not timely raised in a notice of appeal are deemed waived on appeal); *Ubiles*, 66 V.I. at 583; *People v. Ward*, 55 V.I. 829, 842 (V.I. 2011) (this Court will decline to reach issues where a litigant could have filed a cross-appeal, but failed to do so).

## E. Punitive Damages

¶ 21    In its appellant's brief, RAVI argues that "[a]n award of $275,000 for punitive damages in the face of two [z]ero findings, one for past and one for future non-economic compensatory damages[,] and twenty-five thousand dollars in economic compensatory damages[,] can be fairly categorized as grossly excessive and enters the zone of arbitrariness that violates the Due Process Clause of the 14th Amendment." According to RAVI, "[i]n reviewing the jury's punitive damages award together with the jury's uncertainty about the instruction and considering the ratio of compensatory to punitive damages by the U.S. Supreme Court . . . together with the three guiding posts [of its analysis] and applying them here, th[is] Court must find as a matter of law that the award was unconstitutionally excessive . . . in violation of [RAVI's] right pursuant to the Due Process Clause under the Fifth and Fourteenth Amendments of the U.S. Constitution."

¶ 22    In response, Pedro counters that the jury's award of $275,000 in punitive damages "was not unconstitutionally excessive." Additionally, Pedro asserts that RAVI's arguments regarding jury instructions are waived due to RAVI's "[f]ailure to dispute jury instructions at trial, failure to notice an issue with jury instructions in a notice of appeal, and failure to develop an argument."[11]

---

1029, 1043 (V.I. 2020) (noting this Court's "strong preference for trial courts to decide doubtful cases on their merits rather than dismiss them for a failure to strictly follow purely procedural rules") (quoting *Joseph v. Bureau of Corr.*, 54 V.I. 644, 650 (V.I. 2011)). The Superior Court was correct to grant RAVI's motion for an extension.

[11] In its appellate brief, RAVI raised the jury instruction issues in a perfunctory manner, unsupported by argument and citation to legal authority. Additionally, there is no indication that these issues were raised or objected to before the Superior Court. Thus, these issues are deemed

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 13 of 28

¶ 23    "Punitive damages are damages awarded in cases of serious or malicious wrongdoing to punish or deter the wrongdoer or deter others from behaving similarly." *R.J. Reynolds Tobacco Co.*, 76 V.I. at 711 (quoting *Cornelius v. Bank of Nova Scotia*, 67 V.I. 806, 824 (V.I. 2017)) (internal quotation marks omitted). "Each jurisdiction has considerable flexibility in determining the appropriate level of punitive damages to allow in different classes of cases and in any particular case." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (collecting cases)). However, "[w]hile States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards." *State Farm*, 538 U.S. at 416 (collecting cases). "Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426. Furthermore, according to the Supreme Court, "punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.* at 419.

---

waived. *See* V.I.R. APP. P. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal; provided, however, that when the interests of justice so require, the Supreme Court may consider and determine any question not so presented."); *see also*, V.I.R. APP. P. 22(m) ("Issues that were (1) not raised or objected to before the Superior Court, (2) raised or objected to but not briefed, or (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights."); *Williams*, 2024 VI 27, at ¶¶ 24-25; *Ubiles*, 66 V.I. at 583.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 14 of 28

¶ 24    "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."[12] *Id.* at 416-17 (citations omitted). "Due process requires that a person receive fair notice of the possible severity of the punishment they may face and notice is inadequate when that penalty is grossly excessive." *R.J. Reynolds Tobacco Co.,* 76 V.I. at 712 (citing *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 573 (1996)). "The amount of punitive damages only offends due process under the Fourteenth Amendment as arbitrary if the award is 'grossly excessive' in relation to the state's legitimate interests in punishment and deterrence." *Id.* (citing *Gore,* 517 U.S. at 568); *see State Farm,* 538 U.S. at 416-417; *see also Espersen,* 76 V.I. at 623.

¶ 25    On appeal, RAVI challenges only the excessiveness of the punitive damages award. RAVI does not contest the jury's finding of liability for wrongful termination under circumstances justifying punitive damages, nor does RAVI appeal the compensatory damages awarded for lost wages. Accordingly, our review is limited to evaluating the constitutionality of the punitive damages award.

### 1. Constitutionality of the Punitive Damages Award

¶ 26    When determining whether an award of punitive damages is unconstitutionally excessive in violation of due process, the United States Supreme Court has instructed courts reviewing punitive damages to consider three guideposts: "(1) the degree of reprehensibility of the

---

[12] The Due Process Clause of the Fourteenth Amendment is made applicable to the Virgin Islands by virtue of section 3 the Revised Organic Act of 1954. 48 U.S.C. § 1561 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive [and] the second sentence of section 1 of the fourteenth amendment.").

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 15 of 28

defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award (*i.e.*, the ratio of compensatory to punitive damages); and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418 (citing *Gore*, 517 U.S. at 575); *see Espersen*, 76 V.I. at 632-33 (applying *State Farm*'s three guideposts for reviewing punitive damages). "While the United States Supreme Court has emphasized that no single factor is dispositive and courts must consider and weigh all three of these factors, it has nevertheless indicated 'that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'" *State Farm*, 538 U.S. at 425. "Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than [single-digits] may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages," or "where the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* (internal quotation marks and citations omitted). We now apply these guideposts to determine whether the $275,000 punitive damages awarded and entered by the Superior Court in this case was constitutionally sound.

**The degree of reprehensibility of RAVI's conduct**

¶ 27    The United States Supreme Court has identified that the degree of reprehensibility is the most important factor in evaluating the reasonableness of punitive damages. *Id.* at 419. "Compensatory damages presumably make a plaintiff whole, thus punitive damages should only be awarded if the defendant behaved so reprehensibly that further sanctions are necessary." *R.J. Reynolds Tobacco Co.*, 76 V.I. at 712 (citing *State Farm*, 538 U.S. at 419). The Supreme Court has instructed courts to determine the reprehensibility of a defendant's conduct by considering the

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 16 of 28

following five factors: "(1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm,* 538 U.S. at 419 (citing *Gore,* 517 U.S. at 576-77); *see also, Espersen,* 76 V.I. at 633-34.

¶ 28    "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm,* 538 U.S. at 419 (citing *Gore,* 517 U.S. at 575).

¶ 29    We now examine these factors in light of the facts of this case to assess the reprehensibility of RAVI's conduct in its unexplained decision to stop scheduling Pedro for work at his part-time job after October 8, 1998.

¶ 30    The first and second reprehensibility factors clearly weigh against finding RAVI's conduct reprehensible. This case involves solely economic harm—specifically, lost wages resulting from RAVI's decision to stop scheduling Pedro for work. Pedro did not suffer any physical harm. Notably, the jury awarded zero damages for past and future mental anguish, suffering, or loss of enjoyment of life, indicating that they found Pedro did not experience any physical or emotional harm as a result of RAVI's failure to provide an explanation. *Cf. Espersen,* 76 V.I. 634 ("Importantly, several courts have characterized emotional distress, mental anguish, depression, and similar types of harm as physical harm for purposes of analyzing the first *Campbell* factor.").

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 17 of 28

¶ 31    Moreover, RAVI's conduct did not "evince[] an indifference to or a reckless disregard of the health or safety of others." Pedro testified at trial that he was aware RAVI scheduled him on an as-needed basis—specifically stating, "[he was] on contract," and "[w]hen they need me, I go running." Thus, RAVI's unexplained decision to stop scheduling Pedro for work, without more, does not support a finding of despicable conduct that was carried out with "indifference to or a reckless disregard of the health or safety of others."

¶ 32    The third reprehensibility factor is neutral on this record. The "financial vulnerability" of "the target of the conduct" is particularly relevant when the harm inflicted is economic in nature. *See Gore*, 517 U.S. at 576 (explaining that the "infliction of economic injury, especially when done intentionally . . . or when the target is financially vulnerable, can warrant a substantial penalty"). At trial, Pedro testified that he was not getting paid much working as a court marshal "[s]o that's why [he] took on the extra" work; he was saving the extra income he earned from working at RAVI to buy a house and plan a wedding with his then-girlfriend; and he was also using the extra income on his two children and to "go out and sit down and eat and things like that" from time to time. In fact, Pedro testified that he had to push back the wedding for a few years when he lost the extra income he earned from RAVI.

¶ 33    At the same time, however, it is worth noting that Pedro testified that he had been working part-time jobs since "1984 or 1985," averaging about six hours a week, doing "security for nightclubs" or "play[ing] guitar in a group" for pay. He also testified that he was not actively seeking additional work when his coworker Angel Morales—a fellow court marshal—informed him of a company looking for nighttime part-time workers. Pedro explained, "Truthfully, [he] wasn't looking until Morales t[old] [him] this guy was hiring." This suggests that RAVI's conduct may not have made Pedro more financially vulnerable, as he was not actively pursuing additional

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 18 of 28

part-time employment at the time. Moreover, Pedro was aware when he applied that RAVI was "looking for nighttime workers, part-time," and that scheduling would be on an as-needed basis.

¶ 34    The fourth and fifth reprehensibility factors are also neutral. RAVI's unexplained decision to stop scheduling Pedro for work was an isolated incident—namely, RAVI terminated Pedro's part-time employment once. At trial, Pedro testified that after working for RAVI on October 8, 1998, RAVI stopped scheduling him, and he has not worked for the company since.

¶ 35    Based on the record before us, it cannot be said that this was done with "intentional malice, trickery, or deceit." RAVI hired Pedro for a part-time security guard position and scheduled him on an as-needed basis—working conditions that Pedro fully understood and agreed to. Furthermore, RAVI created its work schedule for the security guards based on several factors. For example, RAVI had to consider Pedro's limited availability—he could only work after 5:00 p.m. following his job as a court marshal—and also had to accommodate its client Kmart West's preferences, such as its request to transfer Pedro from that post. Additionally, Pedro testified that "[t]he terms of [his] contract with [RAVI] were [that he] would work at Kmart in Estate Cane, Frederiksted, for three or four or more nights a week, 6:00 p.m. until closing, which is normally 9:00 p.m." Accordingly, it is plausible that when Kmart West requested RAVI to transfer Pedro from that post, those terms no longer applied once he was reassigned to the Pueblo La Reine post.

¶ 36    On the other hand, RAVI's repeated failure to provide Pedro with an explanation may not have been an isolated incident. At trial, Pedro testified that he asked his RAVI supervisor R. Richards about his scheduling concerns on at least two occasions, but R. Richards told him he "had no idea" and "do[es]n't know." Pedro also testified that he was equally unsuccessful in obtaining an explanation from his RAVI manager D. Richards. He first went to see D. Richards at the office,

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 19 of 28

but D. Richards was busy. Pedro then called him multiple times, without success. Finally, Pedro called D. Richards at his home, but again received no response and was, in fact, treated rudely.

¶ 37 However, the impropriety of Pedro's final call to D. Richards must be acknowledged: the fact that Pedro contacted D. Richards at his private home phone number—which D. Richards had not provided to him—for the purpose of discussing his employment with RAVI constituted an inappropriate breach of professional and personal boundaries. Taken together, while RAVI's repeated failure to respond to Pedro's inquiries appears intentional rather than accidental—and certainly deserves no praise—it is quite a stretch to conclude that RAVI's conduct rose to the level of "intentional malice, trickery, or deceit."

¶ 38 None of the foregoing factors weigh in Pedro's favor. Thus, the minimal—if not entirely absent—degree of reprehensibility renders the punitive damages awarded to Pedro suspect. *See State Farm,* 538 U.S. at 419 ("the absence of all of [the reprehensibility factors] renders any award suspect") (citing *Gore,* 517 U.S. at 575). In other words, this case presents none of the circumstances typically associated with egregiously improper conduct. We therefore conclude that RAVI's conduct was not only insufficiently reprehensible to justify a high punitive-to-compensatory damages ratio of 11:1, but that the imposition of any punitive damages in this case is, in and of itself, questionable.

¶ 39 Nevertheless, by choosing not to appeal the jury's finding that RAVI was liable for wrongful termination under circumstances warranting punitive damages, RAVI effectively accepts that finding and concedes that its conduct—specifically, the unexplained decision to stop scheduling Pedro for work at his part-time job after October 8, 1998—rises to a level warranting punitive damages. Given the specific facts of this case, and although vacating the portion of the jury's award imposing punitive damages against RAVI would be justified and appropriate—since

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 20 of 28

RAVI's conduct reflects little to no reprehensibility—we will proceed with our analysis of the second and third *Gore* guideposts. This is not to determine whether the 11:1 punitive-to-compensatory damages ratio is unconstitutionally excessive, as it clearly is, but rather to assist in identifying a more appropriate punitive damages award – an award that, again, RAVI has conceded is warranted.

### The disparity between harm and punitive damages

¶ 40     For the second guidepost, the United States Supreme Court instructed that the punitive damages must bear a "reasonable relationship" to compensatory damages. *Gore*, 517 U.S. at 575, 580. The Supreme Court has been reluctant "to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award" or "to impose a bright-line ratio which a punitive damages award cannot exceed." *State Farm*, 538 U.S. at 424-25; *see Espersen*, 76 V.I. at 636. Nevertheless, the Supreme Court has indicated that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," and that "[a punitive] award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. *State Farm*, 538 U.S. at 425. "[T]hese ratios are not binding," however. *Id.* Rather, these ratios "demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, … or, in this case, of 145 to 1." *Id.*

¶ 41     "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426. Thus, "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 21 of 28

particularly egregious act has resulted in only a small amount of economic damages," and "[t]he converse is also true. . . [w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id.* at 425 (internal quotation marks and citations omitted).

¶ 42 As established in the analysis of the first *Gore* guidepost, the 11:1 punitive-to-compensatory damages ratio in this case is clearly unconstitutionally excessive. The level of reprehensibility of RAVI's conduct is low—arguably non-existent—and the harm suffered by Pedro was purely economic. This is not the type of case in which a higher punitive-to-compensatory ratio exceeding a single-digit multiplier would comport with due process. *See State Farm*, 538 U.S. at 425 ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."). Put simply, a punitive damages award of $275,000—reflecting an 11:1 ratio to the $25,000 in compensatory damages—is unjustified here, as it is not "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm*, 538 U.S. at 426.

### The difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases

¶ 43 For the third and final guidepost, the United States Supreme Court instructed the reviewing court to examine the disparity between the punitive awards and the "civil penalties authorized or imposed in comparable cases." *R.J. Reynolds Tobacco Co.*, 76 V.I. at 726 (quoting *State Farm*, 538 U.S. at 428).

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 22 of 28

¶ 44    In its appellant's brief, RAVI cites solely to *Espersen* in its analysis for the third guidepost[13] and notes that "where the underlying conduct/acts of the defendants are stated to have been based on reprehensible behavior involving a retaliatory discharge and accusation of theft involving loss of reputation claims that were dismissed by the Superior Court in this case by motion of [RAVI], and where the ratio of punitive damages to compensatory damages in *Espersen* was significantly lower than the ratio of punitive damages to compensatory damages in the case at bar[, i]t then weighs in favor of significantly reducing the punitive damages awarded to plaintiff, especially in light of the jury having found no noneconomic damages indicating they found no harm to plaintiff other than the awarded $25,000 in loss wages (back pay)."

¶ 45    "Since the defendants bear the burden of proving that the punitive damage awards are unconstitutionally excessive, this Court is under no obligation to *sua sponte* scour court judgments, statutes, and other authorities to analyze this factor when the defendants have declined to do so." *Espersen*, 76 V.I. at 633 (citations omitted). Accordingly, we limit our discussion here to *Espersen*.

¶ 46    In *Espersen*, the jury rendered a verdict, *inter alia*, against the three defendant-employers for wrongful discharge, and awarded compensatory damages against defendants "jointly and severally" and separate punitive damages against each defendant. 76 V.I. at 599. With respect to the second *Gore* guidepost, we emphasized in *Espersen* that the relevant inquiry was not "the disparity between $210,103 in compensatory damages and [the combined] $1,610,000 in punitive damages, but [rather] the disparity between the $210,103 in compensatory damages and the

---

[13] While RAVI also cites civil penalties under title 24 of the Virgin Islands Code governing "Labor," he nevertheless notes that "none of them are applicable to the wrongful discharge claim."

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 23 of 28

$360,000 punitive damage award against Sugar Bay, the $500,000 punitive damage award against Aimbridge, and the $750,000 punitive damages award against AHRA." *Id.* at 636.

¶ 47    We then identified the punitive-to-compensatory damages ratios for each defendant, both under a joint-and-several theory and under an equal apportionment of compensatory damages. Under the joint-and-several approach, "the ratio between the compensatory damages and the punitive damages assessed against each defendant is modest, in that the jury awarded punitive damages at an approximate ratio of 1.5:1 against Sugar Bay, and 2.5:1 against Aimbridge, and 3.5:1 against AHRA." *Id.* Even if the $210,103 in compensatory damages were apportioned equally among the three defendants—resulting in $70,034 per defendant—"this would still result in approximate ratios of only 5:1 for Sugar Bay and 7:1 for Aimbridge, and 10:1 for AHRA." *Id.*

¶ 48    This Court—after analyzing the punitive damages award "as a separate award against each defendant" by examining the ratios in isolation and also relative to each other based on their respective reprehensibility[14]—reduced the punitive damages awarded against AHRA to match

---

[14] In *Espersen*, we stated in relevant parts:

> At trial, Espersen introduced evidence indicating that she had been repeatedly harassed at work by Talbert — the individual who suspended her — and that after she filed an internal complaint about his behavior nothing was done and the harassment escalated. She further introduced evidence that not long before her suspension and termination she had filed internal complaints against Castro and Santana for violating resort policies. Moreover, she introduced evidence that Sugar Bay and its agents had been aware that she had been a witness to a slip-and-fall incident at the resort that resulted in a lawsuit, and that Sugar Bay representatives told the plaintiff's counsel in that case that she was unavailable because she no longer worked there, despite Sugar Bay having her contact information. And perhaps most significantly, Espersen introduced overwhelming evidence that the defendants were aware that she did not accept and keep cash payments from unregistered guests as alleged, yet terminated her employment anyway. This evidence, when taken together, provides strong support for the proposition that the defendants suspended, and later terminated, Espersen as retaliation for her internal complaints, and to reduce the likelihood that she would serve as a credible witness against Sugar Bay in the slip-and-fall lawsuit.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 24 of 28

those assessed against Sugar Bay, and affirmed the awards against Sugar Bay and Aimbridge. As a result, the final punitive-to-compensatory damages ratios were approximately 1.5:1 for Sugar Bay and AHRA, and 2.5:1 for Aimbridge under the joint-and-several theory, or approximately 5:1 for Sugar Bay and AHRA, and 7:1 for Aimbridge under an equal apportionment of compensatory damages.

¶ 49    It is undisputable that the employers' conduct in *Espersen*—terminating an employee for alleged theft, which justified a jury award for mental anguish[15]—was significantly more reprehensible than RAVI's conduct, which involved simply ceasing to schedule a part-time employee, albeit without explanation. In *Espersen*, we concluded that all three defendants engaged

---

> In addition, AHRA and Aimbridge maintain that punitive damages should not have been assessed against them because Espersen had been terminated by Sugar Bay, with them not serving as the decision makers. Again, however, this argument ignores the substantial amount of evidence, in the form of both testimony as well as their respective agreements with Sugar Bay, that AHRA and Aimbridge were not mere consultants or advisors, but agents of Sugar Bay who possessed hire and fire authority. Notably, it also ignores the fact that several of the individuals who retaliated against Espersen were either employed by AHRA and Aimbridge or operated under their direct control. Consequently, this Court concludes that Espersen introduced sufficient evidence to sustain a punitive damages award on the wrongful discharge count.
>
> . . . .
>
> Aimbridge acted with a much greater degree of reprehensibility than Sugar Bay and AHRA. Moreover, the conduct that justified the jury's mental anguish award — firing Espersen for stealing — was largely committed by Aimbridge employees, with Sugar Bay playing a passive role and only a single AHRA employee actively involved in the termination decision. Under these circumstances, we cannot conclude that the *Campbell* factors, when properly weighed, support imposing a greater amount of punitive damages against AHRA relative to its co-defendants. Consequently, although we affirm the punitive damage awards with respect to Sugar Bay and Aimbridge, we reduce the punitive damages awarded against AHRA from $750,000 to $360,000, so that it is equivalent to the punitive damages assessed against Sugar Bay.

76 V.I. at 630-31, 638.

[15] *See supra,* note 14.

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 25 of 28

in some degree of reprehensible conduct, though not equally. Here, by contrast, our analysis reveals that RAVI's conduct was minimally, if at all, reprehensible. Moreover, the jury in *Espersen* awarded damages for mental anguish, reflecting the egregiousness of the employers' actions. Yet even in that case, the punitive-to-compensatory damages ratios remained within single digits—including for Aimbridge, the most culpable employer, the ratio was approximately 2.5:1 or 7:1. By comparison, RAVI faced an 11:1 ratio despite causing only economic harm, and the jury awarded Pedro zero damages for past and future mental anguish, suffering, and loss of enjoyment of life.

¶ 50    This discrepancy highlights that RAVI lacked fair notice that its conduct of such comparatively low reprehensibility could result in a severe punitive sanction—specifically, a punitive damages award eleven times the compensatory amount. As the Supreme Court has emphasized, due process requires not only notice of what conduct may be punished, but also of the potential severity of the penalty. *See State Farm*, 538 U.S. at 416-17 ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. The reason is that 'elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.'") (citations omitted); *see also, R.J. Reynolds Tobacco Co.*, 76 V.I. at 712 ("Due process requires that a person receive fair notice of the possible severity of the punishment they may face and notice is inadequate when that penalty is grossly excessive.") (citing *Gore*, 517 U.S. at 573).

¶ 51    Our analysis of the three *Gore* guideposts demonstrates that the punitive damages awarded in favor of Pedro were unconstitutionally excessive and therefore violate due process. In fact, our evaluation of the first—and most important—*Gore* guidepost suggests that the specific facts of

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 26 of 28

this case may not warrant punitive damages at all. Nevertheless, because RAVI did not appeal the jury's finding of liability for wrongful termination under circumstances justifying punitive damages, we now proceed to determine a constitutionally permissible punitive damages award. *See Espersen*, 76 V.I. at 624-25 ("[T]he question of whether a punitive damages award comports with the Due Process Clause of the United States Constitution is a pure question of law on which a jury is entitled to absolutely no deference. . . . Thus, we conclude that reduction of the punitive damages award, and not a new trial, constitutes the appropriate remedy for a constitutionally excessive verdict as to punitive damages."); *see also R.J. Reynolds Tobacco Co.*, 76 V.I. at 711-28 (upon analyzing the principles discussed in *Gore* and *State Farm*, we concluded that the jury's award of punitive damages was unconstitutionally excessive after analysis and reduced the punitive damages award from $30 million to $14.4 million).

## 2. Determining the Appropriate Maximum Punitive Damages Award

¶ 52    "In making this determination, an appellate court should keep in mind, that its constitutional mission is only to find a level higher than which an award may not go; it is not to find the 'right' level in the court's own view." *R.J. Reynolds Tobacco Co.*, 76 V.I. at 727. "Measurement of damages is, of course, far from exact, a fact reflected in the Supreme Court's qualification of its single-digit presumption: only awards exceeding that level 'to a significant degree' are constitutionally suspect." *Id.* (citing *State Farm*, 538 U.S. at 425). "[D]ue process does not entitle a tortfeasor to notice of the precise amount of the penalty that may be imposed," thus, "[t]he judicial function is to police a range, not a point." *Id.* (internal quotation marks and citation omitted).

¶ 53    "While we must assess independently the wrongfulness of a defendant's conduct, our determination of a maximum award should allow some leeway for the possibility of reasonable

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 27 of 28

differences in the weighing of culpability." *Id.* Importantly, "[i]n enforcing federal due process limits, an appellate court does not sit as a replacement for the jury but only as a check on arbitrary awards." *Id.* (citing *Gore*, 517 U.S. at 568) ("States necessarily have considerable flexibility in determining the level of punitive damages they will allow ... in any particular case").

¶ 54    We have already explained the reasons for our assessment of RAVI's reprehensibility—the most important guidepost—as minimal to non-existent. *See State Farm*, 538 U.S. at 419 ("[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.") (quoting *Gore*, 517 U.S. at 575). This, combined with the fact that this case involves no hard-to-detect injury, no non-economic harm (past or future), and purely economic harm in lost wages which was fully compensated by the jury's award of $25,000,[16] strongly supports a minimal punitive damages award at the low end of the single-digit ratio range. *See id.* at 425 ("The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.") (internal quotation marks and citations omitted).

¶ 55    Thus, after careful and thorough de novo review of the underlying facts—and applying our analysis of the Supreme Court's three guideposts in *Gore* and *State Farm*—we conclude that the maximum constitutionally permissible punitive damages award here is $25,000, representing a 1:1 punitive-to-compensatory damages ratio. This amount acknowledges the jury's finding that RAVI was liable for wrongful termination under circumstances warranting punitive damages – a finding

---

[16] *See R.J. Reynolds Tobacco Co.*, 76 V.I. at 712 (citing *State Farm*, 538 U.S. at 419) ("Compensatory damages presumably make a plaintiff whole, thus punitive damages should only be awarded if the defendant behaved so reprehensibly that further sanctions are necessary."); *see also, State Farm*, 538 U.S. at 416 (Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.").

*Ranger American of the V.I., Inc. v. Pedro*
S. Ct. Civ. No. 2024-0119
Opinion of the Court
Page 28 of 28

that, as we have taken pains to point out in our discussion, RAVI does not challenge. Moreover, it advances the Virgin Islands' legitimate interest in punishing and deterring termination of employment without explanation, while also considering the minimal to non-existent level of reprehensibility in RAVI's conduct and the Virgin Islands' corresponding slight interest in punishment and deterrence. At the same time, it remains consistent with the punitive damages awarded in *Espersen*, where the employers' conduct was significantly more reprehensible than RAVI's conduct here.

### III. CONCLUSION

Based on the foregoing, we reduce the punitive damages award against RAVI in the May 21, 2024 Judgment from $275,000 to $25,000.

**Dated this 10th day of September, 2025.**

**BY THE COURT:**

**HAROLD W.L. WILLOCKS**
**Associate Justice**

**ATTEST:**

**DALILA E. PATTON, ESQ.**
**Acting Clerk of the Court**

By: _____

**Deputy Clerk II**

Dated: 9-10-2025